(29 P.3d 967)
No. 83,639

JOYCE STOVER, *Appellant*, v. SUPERIOR INDUSTRIES INTER-
NATIONAL, INC., *Appellee*, and PATRICIA GLADSON, *Appellant*,
v. SUPERIOR INDUSTRIES INTERNATIONAL, INC., *Appellee*.

Opinion filed August 4, 2000.

*Kala Spigarelli, Fred Spigarelli,* and *Thomas E. Hayes,* of Spigarelli, McLane & Short, of Pittsburg, for appellants.

*Jeremiah J. Morgan* and *John J. Yates,* of Bryan Cave LLP, of Kansas City, Missouri, and *John I. O'Connor,* of The Advocates Group—A Law Firm, of Pittsburg, for appellee.

Before BRAZIL, C.J., GERNON and BEIER, JJ.

GERNON, J.: Joyce Stover and Patricia Gladson appeal the trial court's decision to grant judgment as a matter of law to Superior Industries International, Inc., (Superior) after a jury returned verdicts in favor of Stover and Gladson.

We reverse and reinstate the jury verdicts.

Stover and Gladson were fired from their employment by Superior. The firing occurred 1 day after a coworker told Stover a rumor concerning a former plant manager and his wife, Leon and Mary Kay Easton. Stover shared the rumor with Gladson, who was

a friend of Mary Kay, and suggested that Gladson inform Mary Kay of the rumor.

Gladson called Mary Kay and informed her. Mary Kay was very upset about the call. When Mary Kay finished speaking with Gladson, she immediately called Linda Scherz-Purselley, Superior's human resource manager in Pittsburg. During the conversation, Mary Kay told Scherz-Purselley that Stover was evil and needed to have her mouth shut.

After being fired, Stover and Gladson filed suit against Superior for wrongful termination. A jury returned verdicts in favor of Stover and Gladson, finding that Superior breached its implied contracts with the plaintiffs and awarding Stover $100,000 and Gladson $80,000 in damages.

Following the jury's verdict, Superior renewed its motion for judgment as a matter of law and filed an alternative motion for a new trial. The trial court granted Superior's motion for judgment as a matter of law and granted its motion for a new trial. Stover and Gladson appeal.

### Judgment as a Matter of Law

Stover and Gladson claim the trial court erred in granting Superior's motion for judgment as a matter of law.

The legislature modified K.S.A. 60-250, renaming a motion for a directed verdict as a motion for judgment as a matter of law. L. 1997, ch. 173, § 26. Accordingly, the same standard of review for a directed verdict applies to a motion for judgment as a matter of law.

When reviewing a trial court's decision on a directed verdict, an appellate court is required to resolve all facts and inferences reasonably drawn from the evidence in favor of the party opposing the motion. If reasonable minds could reach different conclusions, the motion must be denied. *Pilcher v. Board of Wyandotte County Comm'rs*, 14 Kan. App. 2d 206, 208, 787 P.2d 1204, *rev. denied* 246 Kan. 768 (1990).

The question is not whether there is no evidence supporting the party opposing the motion. Instead, the court must determine whether there is evidence upon which a jury could find a verdict for that party. Even when the facts are undisputed, there could be

conflicting inferences from those facts. When no evidence is presented or when the evidence is undisputed and reasonable minds may not draw differing inferences and arrive at opposing conclusions, the matter becomes a question of law for the court. 14 Kan. App. 2d at 209.

The trial court did not specify its reason for granting the motion for judgment as a matter of law. The court merely referred to Superior's arguments in its motion. The trial court concluded, as a matter of law, that the plaintiffs did not present any evidence to support a finding that an implied contract existed.

Generally, Kansas follows the employment-at-will doctrine when there is not an express or implied contract of employment. *Ortega v. IBP, Inc.*, 255 Kan. 513, 516, 874 P.2d 1188 (1994). Under the employment-at-will doctrine, an employer can terminate an employee for good cause, for no cause, and even for a wrong cause. 255 Kan. at 516.

The employment-at-will doctrine, however, has gradually eroded. Kansas now recognizes two exceptions to this rule. The first exception is for terminations that violate public policy. See, *e.g., Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 495-97, 630 P.2d 186 (1981). The second exception is for an implied-in-fact contract. See, *e.g., Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 139-40, 815 P.2d 72 (1991); *Morriss v. Coleman Co.*, 241 Kan. 501, 513-14, 738 P.2d 841 (1987); *Masterson v. Boliden-Allis, Inc.*, 19 Kan. App. 2d 23, 25-26, 865 P.2d 1031 (1993); *Allegri v. Providence-St. Margaret Health Center*, 9 Kan. App. 2d 659, 664-65, 684 P.2d 1031 (1984).

An implied-in-fact contract "recognizes an implied obligation on the employer to not terminate an employee arbitrarily where a policy or program of the employer, either express or implied, restricts the employer's right of termination at will." *Brown*, 249 Kan. at 135.

Stover and Gladson do not claim that the public policy exception applies; they claim their employment with Superior was based on implied-in-fact contracts and that they were terminated in violation of those contracts.

The determination of whether an implied-in-fact contract exists is a question of fact for the jury to decide. The intent of the parties

need not be established by direct proof but can be shown by acts, circumstances, and inferences reasonably drawn therefrom. " ' "The understanding and intent of the parties is to be ascertained from their written or oral negotiations, the usages of business, the situation and object of the parties, the nature of the employment, and all the circumstances surrounding the transaction." ' " *Allegri*, 9 Kan. App. 2d at 663.

In *Morriss v. Coleman Co.*, 241 Kan. 501, two employees, a married man and an unmarried woman, were terminated for traveling together to pick up a company car for a manager. The employees brought a wrongful termination suit, alleging that Coleman had breached an implied-in-fact employment contract to terminate their employment for good cause. To support this claim, the employees relied on a supervisor's manual which provided that employees would be discharged only for good cause, the company's policy of progressive discipline, the company's purpose to treat the employees fairly and uniformly and entitle them to a career with the company, and the communication of the company's policies by supervisors. The Kansas Supreme Court reversed a summary judgment decision in Coleman's favor, holding that the employees' evidence of intent was sufficient to establish a factual question for the jury. 241 Kan. at 514.

The facts in this case are analogous to those in *Morriss*. Here, Stover and Gladson presented evidence of an employee handbook which articulated Superior's policy of progressive discipline and defined a 90-day probationary period during which an employee could be terminated for any reason. The employee handbook also stated that Superior endeavored to treat its employees fairly and respectfully and acknowledged Superior's expectation that employees would enjoy a long and challenging career with it.

Stover and Gladson also presented a supervisor's manual which articulated Superior's policy for resolving problems and avoiding the need to terminate employees. Three members of Superior's management team testified that Superior's policy was to terminate employees only for good cause.

Superior attempts to distinguish *Morriss* by highlighting the fact that the supervisors communicated the policies to the employees in that case. That fact cannot distinguish the cases. The *Morriss*

employees had to demonstrate that they were aware of the policies before being terminated even though they had not received a copy of the employees' manual. To establish this fact, the *Morriss* employees testified that supervisors informed them of the policies.

In this case, both Stover and Gladson received copies of the employee handbook and testified that they were familiar with the policies it articulated. Thus, Stover and Gladson established that they were aware of Superior's policies without being told by supervisors.

Next, Superior argues that Stover and Gladson did not receive the handbook until after they began working and did not rely on its terms as a basis for accepting employment with Superior. Consequently, Superior contends, the employees could not have formed a contract because there was not a meeting of the minds. This argument is not supported by Kansas case law. None of the cases recognizing an implied-in-fact contract considered whether the employees relied on the employer's policies as a basis for accepting employment. See, *e.g. Brown*, 249 Kan. at 137-38; *Morriss*, 241 Kan. at 513-14; *Masterson*, 19 Kan. App. 2d at 25-26; *Allegri*, 9 Kan. App. 2d at 663-64.

Superior relies on *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 173-74, 872 P.2d 252 (1994), for the proposition that there must be mutual assent or additional consideration for an implied contract that supplemented or changed the original employment relationship. In *Dickens*, the employee had an express written employment contract. The employee claimed that the written contract had been modified to include the implied requirement of good cause for termination. The *Dickens* court held that the employee failed to present any evidence of mutual modification of the written employment contract. In this case, there is no written employment contract to modify, and *Dickens* is not on point.

Next, Superior argues that the disclaimer in the employee handbook, the employment application, the confidentiality agreement, and the professional conduct statement clearly evidence its intent not to form a contract with its employees.

A disclaimer, however, does not determine the issue as a matter of law. See *Morriss*, 241 Kan. at 514. The *Morriss* court noted that there was no evidence that the disclaimer had been brought to the

employees' attention or that it was intended to create an unqualified employment-at-will relationship, especially in view of the other provisions in the manual and the employer's statements.

In *Masterson*, 19 Kan. App. 2d at 25-26, the employer raised the same argument without success. This court held that the disclaimer did not preclude a verdict in favor of the plaintiff because there was no evidence the employee had personal knowledge of the disclaimer and because the employee's claim was based on a supervisor's actions in addition to the policy manual. 19 Kan. App. 2d at 26.

Likewise, in this case, there is no evidence that the disclaimer was brought to the personal attention of Stover or Gladson, and their claims were based on more than the policies in the handbook. Superior's supervisors testified that the company's policy was to terminate only for good cause.

Considering all of the facts and inferences reasonably drawn from the evidence in favor of the plaintiffs, the trial court erred in holding for Superior as a matter of law. There was sufficient evidence to permit a jury to determine the factual issue of whether implied-in-fact contracts existed between Stover and Gladson and Superior.

## Verdict

When a verdict is challenged as being contrary to the evidence, an appellate court does not reweigh the evidence or pass on the credibility of the witnesses. If the evidence and all reasonable inferences to be drawn therefrom, when viewed in a light most favorable to the prevailing party, supports the verdict, it will not be overturned on appeal. *Masterson*, 19 Kan. App. 2d at 24.

Because the evidence is adequate to withstand Superior's motion for judgment as a matter of law, it follows that the evidence is also sufficient to support the jury's verdict. See *Brown*, 249 Kan. at 140.

## Jury Instructions

The trial court granted both the motion for judgment as a matter of law and Superior's motion for a new trial based on erroneous jury instructions. The motion for judgment as a matter of law would obviously make the new trial ruling moot.

K.S.A. 1999 Supp. 60-250(b) provides:

"A motion for a new trial under K.S.A. 60-259 and amendments thereto may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative. If a verdict was returned the court, in disposing of the renewed motion, may allow the judgment to stand or may reopen the judgment and either order a new trial *or* direct the entry of judgment as a matter of law." (Emphasis added.)

Superior proposed certain instructions and argued their merit. The trial court did not grant or deny Superior's request on the record, and Superior did not object to the trial court's proposed instructions or object to the omission of their requested instructions.

If an instruction is not clearly erroneous, a party may not claim error in the giving or failure to give an instruction unless the party objects before the jury retires to consider the verdict. *Bright v. Cargill, Inc.*, 251 Kan. 387, 409, 837 P.2d 348 (1992). An instruction is clearly erroneous if the reviewing court reaches a firm conviction that if the error had not occurred, there was a real possibility that the jury would have returned a different verdict. *Jackson v. City of Kansas City*, 263 Kan. 143, 148, 947 P.2d 31 (1997). If the instructions as a whole are substantially correct and the jury could not have been misled by them, the instructions will be approved on appeal. *Bright*, 251 Kan. at 408.

We have reviewed the proposed instructions and conclude there was no dispute as to whether a contract was formed. Therefore, we find no error in the instruction given by the trial court, which followed PIK Civ. 3d 124.03.

Superior also argues that the trial court's decision to grant a new trial is supported by juror misconduct. The trial court denied Superior's motion for a new trial based on juror misconduct, finding the issue to be moot. Stover and Gladson did not raise this issue and do not complain of the trial court's decision.

When rulings on remand may affect the subsequent course of the proceedings, it is necessary that a cross-appeal be perfected in order for the appellee to obtain review over such rulings. *Vaughn v. Murray*, 214 Kan. 456, 462, 521 P.2d 262 (1974). Superior failed to perfect a cross-appeal. Thus, this issue is not properly before this court.

On remand to the district court, however, Superior could renew its motion for a new trial on this ground because no final judgment has been entered in the case. See *Grimmett v. S & W Auto Sales Co.*, 26 Kan. App. 2d 482, 485, 988 P.2d 755 (1999). To avoid a further appeal, this court will determine the issue.

The juror misconduct alleged by Superior involved the presiding juror's failure to inform the court that she was involved in litigation. During voir dire, the plaintiffs' attorney questioned the prospective jurors about any litigation they had participated in. Some of the jurors selected for the panel admitted to participating in litigation. Clearly their previous experience with litigation did not preclude their selection for the panel.

Likewise, the presiding juror's participation in litigation did not alone disqualify her from jury duty. Review of the type of litigation she was involved in fails to establish any bias against Superior. According to the record, the juror was a defendant in several debt collection cases. None of those cases involved a party to this lawsuit.

Appellate courts consistently adhere to the rule in both civil and criminal cases that juror misconduct is not a ground for a reversal, a new trial, or a mistrial unless it is shown to have substantially prejudiced a party's rights. The party claiming prejudice bears the burden of proof. *Hawkinson v. Bennett*, 265 Kan. 564, 599, 962 P.2d 445 (1998).

Superior relies on *Kaminski v. Kansas City Public Service Co.*, 175 Kan. 137, 140, 259 P.2d 207 (1953), and *Kerby v. Hiesterman*, 162 Kan. 490, 496-97, 178 P.2d 194 (1947), for support, arguing that a juror's failure to disclose participation in litigation requires a new trial. Both of these cases can be distinguished from this case.

In *Kaminski*, the plaintiff received a verdict for personal injuries resulting from being hit by a bus while bicycling. During voir dire, two jurors responded negatively when asked whether they had been involved in any litigation. Both jurors, however, had been involved in similar tort litigation—one for wrongful death of a daughter and the other for damages for injuries sustained by a spouse in a car accident.

In *Kerby*, the plaintiff received a verdict for damages from a contract claim. During voir dire, the jury foreman was asked

whether the plaintiff's counsel had represented him, and he responded negatively. In fact, the plaintiff's counsel had represented the foreman in a recent case before the county court.

Unlike the jurors in *Kaminski* and *Kerby*, the juror in this case had not participated in similar litigation and had not been represented by either party's counsel. Beyond pointing out the juror's failure to admit her debt collection problems, Superior fails to demonstrate any evidence of bias by the juror. Accordingly, Superior has failed to demonstrate any prejudice as a result of this juror serving on the jury.

This matter is reversed with instructions that the jury verdicts be reinstated. Superior may file a motion for a new trial. However, the issue of juror misconduct should not be the basis of a favorable ruling for Superior.

Reversed and remanded with directions.