(33 P.3d 249)

No. 86,661

HEATHER INSCHO, *Appellant,* v. EXIDE CORPORATION, *Appellee.*

Opinion filed October 19, 2001.

*Larry G. Michel,* of Kennedy Berkley Yarnevich & Williamson, Chartered, of Salina, for appellant.

*James C. Holland,* of Spencer Fane Britt & Browne, LLP, of Kansas City, Missouri, for appellee.

Before MARQUARDT, P.J., GERNON, J., and TIMOTHY E. BRAZIL, District Judge, assigned.

BRAZIL, J.: Heather Inscho sued Exide Corporation claiming breach of an implied employment contract. She appeals from the trial court's grant of summary judgment to Exide. She contends that the trial court erred in deciding as a matter of law that no implied contract existed between her and Exide. She also contends that the trial court erred by ruling in the alternative, and as a matter of law, that if there was an implied contract, there was just cause to terminate her. We affirm.

Inscho had worked for Exide since April 1997. Exide terminated her employment on December 23, 1998, for fighting with another employee, which was in violation of company policy.

Inscho admitted in her deposition that she did not have a written contract with Exide. At the time she applied for the position, she understood that Exide could terminate her employment at any time with or without cause or notice. Inscho further acknowledged that she had signed two receipts for an employee handbook in April and October 1997, and admitted the handbook was not a contract. The receipts state that all employment contracts must be in writing and signed by either the president or chief executive officer of Exide. The handbook states that there are no contracts of employment for a specific duration unless they are in writing and signed by an appropriate Exide official. Inscho admitted that the handbook did not create an implied contract.

Inscho also testified in her deposition about participating in an anonymous employee survey conducted by an outside management consulting firm which asked the employees to rate their satisfaction concerning certain statements. Inscho testified that the employees' favorable responses to two particular questions on the survey created an implied contract.

Todd Petersen, the human resources manager for Exide, testified in his deposition that during his tenure at Exide, he did not terminate any employees arbitrarily, nor had anyone been terminated other than for a violation of an Exide policy.

In ruling on Exide's motion for summary judgment, the trial court determined that there were no material issues of fact. The trial court ruled as a matter of law that no implied employment contract existed between the parties and, in the alternative, if an

implied contract did exist, Exide had just cause to terminate Inscho's employment. Inscho timely appeals.

Exide's disciplinary policy is part of the employee handbook. The policy states that nothing limits Exide's right to terminate an employee at any time for any reason. Inscho admitted that the policy prohibited disorderly conduct, which included fighting, and that such conduct could subject an employee to discharge. Inscho also admitted that she was aware of the process of terminating employees as stated in the policy. The policy states that before discharge is finalized, the employee is placed on indefinite suspension to allow the company to review all of the facts and to ensure the discharge action is appropriate and consistent.

Inscho admitted that on December 18, 1998, she grabbed another employee's hair and yanked her forward. She denied trying to hit back and stated that she was trying to prevent her opponent from continuing to hit her in the head. Inscho also stated that she was unable to retreat because she was cornered in between an open car door and the car. Another witness stated that he saw Inscho swing at her opponent. Both employees were suspended and then terminated after a company investigation.

Petersen testified about the company policy regarding fighting. Petersen said that the sole reason for Inscho's termination was her participation in the fight. He stated that the fact Inscho grabbed her opponent's hair constituted participation in the fight.

Both issues Inscho raises are subject to the same standard of review. The standard of review on a motion for summary judgment is well established. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 2000 Supp. 60-256(c). On appeal, we apply the same rules, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. See *Jackson v. U.S.D. 259*, 268 Kan. 319, 322, 995 P.2d 844 (2000).

When the issue on appeal is whether the trial court correctly granted summary judgment, an appellate court should read the

record in the light most favorable to the party against whom summary judgment was entered. A party opposing a summary judgment may not rest merely on allegations, but must provide some affirmative evidence to support its position. K.S.A. 2000 Supp. 60-256(e); see *Bi-State Dev. Co., Inc. v. Shafer, Kline & Warren, Inc.*, 26 Kan. App. 2d 515, 517, 990 P.2d 159 (1999).

At the outset, we are compelled to comment about the condition of the record on appeal. Material included as an appendix to an appellate brief is not a substitute for the record on appeal. *Zeferjohn v. Shawnee County Sheriff's Dept.*, 26 Kan. App. 2d 379, 383, 988 P.2d 263 (1999). It would have been helpful for items relied on by either Inscho or Exide to have been submitted as part of the record on appeal. These items were before the trial court and their absence made our task of appellate review unnecessarily difficult.

Inscho contends that there was an implied contract of employment between her and Exide in which she would only be terminated for good cause. She argues that summary judgment is rarely appropriate in implied contract cases because the parties' subjective intent is typically a question of fact for the jury. Exide contends that a party's unilateral expectation of continued employment is insufficient as a matter of law to establish an implied contract; thus, the trial court did not err in granting summary judgment to Exide.

Inscho sets forth five facts which she claims create an issue of fact as to the existence of an implied contract: (1) Petersen's testimony that Exide does not randomly or arbitrarily terminate employees unless they have violated one of the written policies; (2) the employee surveys showing that Exide employees overwhelmingly believe they have job security as long as they perform their job in a satisfactory manner; (3) Petersen's testimony that the employees' beliefs as reflected in the surveys are viewed by Exide as desirable responses; (4) Inscho's testimony concerning her belief that as long as she did a good job in her work, she would not be terminated without good cause; and (5) good performance ratings by Inscho's supervisor at the time of termination, together with his statement that he would recommend her for reemployment.

The existence of an implied employment contract is one exception to the employment-at-will doctrine followed in Kansas. An

implied employment contract arises from facts and circumstances showing a mutual intent to contract. *Kastner v. Blue Cross & Blue Shield of Kansas, Inc.*, 21 Kan. App. 2d 16, 22-23, 894 P.2d 909, *rev. denied* 257 Kan. 1092 (1995). Relevant factors to consider in deciding whether the parties had mutual intent to contract include: (1) written or oral negotiations; (2) the conduct of the parties from the commencement of the employment relationship; (3) the usages of the business; (4) the situation and objective of the parties giving rise to the relationship; (5) the nature of the employment; and (6) any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time employment commenced. *Allegri v. Providence-St. Margaret Health Center*, 9 Kan. App. 2d 659, Syl. ¶ 5, 684 P.2d 1031 (1984).

This court in *Stover v. Superior Industries Int'l, Inc.*, 29 Kan. App. 2d 235, Syl. ¶ 4, 29 P.3d 967 (2000), held: "The determination of whether an implied-in-fact contract exists is a question of fact for the jury to decide." The court further stated: "Under the facts of this case, it is held that the trial court erred in granting judgment as a matter of law to the defendants because there was sufficient evidence to permit a jury to determine whether implied-in-fact contracts existed between the parties." 29 Kan. App. 2d 235, Syl. ¶ 9. *Stover* suggests that in all cases where there is an allegation of an implied contract, a jury must decide the issue; it also suggests that the issue of "sufficient evidence" makes it a jury question.

The facts in the instant case vary dramatically from *Stover*, and we make it clear that just because a plaintiff alleges an implied-in-fact contract, a jury determination is not always required. There are cases, such as those presented in *Stover*, that require jury determination; however, there are also cases where a jury determination is not required.

While the existence of an implied contract of employment is generally a jury question, an employer can prevail on summary judgment if the employee only presents evidence of his or her unilateral expectations of continued employment. *Kastner*, 21 Kan. App. 2d at 24. Here, the trial court found that an implied contract was not created by course of dealing, policy, or handbook, and "at

best," Inscho demonstrated only a unilateral expectation of continued employment. We agree. Inscho has offered nothing probative that would indicate the parties had a mutual intent to contract at the time employment commenced for termination for good cause only. Inscho's own beliefs are clearly evidence of her expectation, and performance reviews and related statements were implicitly rejected in *Kastner* as a basis for an implied contract. What is left of Inscho's argument is that Petersen's testimony and the employee opinion surveys create an issue of fact as to Exide's intent.

Petersen's testimony that Exide had previously terminated employees only for violations of policy does not demonstrate an intent by Exide that a violation was required prior to termination.

Here, Inscho claimed in her response to summary judgment and on appeal that Exide used the survey "as a mechanism for measuring confidence and conveyed the impression to employees that they would keep their job if they performed in a satisfactory manner." We fail to see how an anonymous employee survey administered by an outside consultant demonstrates the required meeting of the minds between employee and employer to form an implied employment contract.

Inscho failed to present more than her unilateral expectation that an implied contract existed between her and Exide; therefore, the trial court did not err in granting Exide's motion for summary judgment on this issue.

Inscho contends that the issue of whether Exide had just cause to terminate her was a question of fact for the jury and cannot be decided as a matter of law. Furthermore, she contends that facts relating to the issue of just cause were controverted, thereby precluding summary judgment on this issue. To support her argument, she relies on the definition of "just cause" in Black's Law Dictionary 775 (5th ed. 1979), which states: "[J]ust cause is a cause outside legal cause, which must be based on reasonable grounds, and there must be a fair and honest cause or reason, regulated by good faith." From this premise, she claims that the standard for determining just cause is similar to the reasonableness standard in a negligence action and, thus, cannot be decided as a matter of law.

Exide argues that if an implied contract existed, it did not breach the contract because Inscho violated company policy when she grabbed her opponent's hair and pulled her forward—which she has admitted doing. From this premise, Exide reasons that it had just cause to terminate Inscho. Exide asserts that cause exists when an employer does not terminate arbitrarily, but follows its policies when it terminates an employee for policy violations. Exide further maintains that summary judgment was appropriate because Inscho failed to come forward with something of evidentiary value to establish a material dispute of fact.

The trial court concluded that even if there was an implied contract, the definition of "fighting" contained in the policy and the use of the colloquial term "fighting" would support finding her conduct constituted just cause for her termination. Relying on the disciplinary policy in the employee handbook and Petersen's affidavit, the trial court stated that "disorderly conduct can be anything, fighting, physical violence, playing pranks, horseplay, intimidation, molestation, tripping, pushing, kicking or any other conduct which may interfere with an employee."

The implied contract theory recognizes an implied obligation on the employer to not terminate an employee arbitrarily where a policy or program of the employer, either express or implied, restricts the employer's right of termination at will. In essence, the employer is barred from violating its own policies in discharging the employee. *Allsup v. Mount Carmel Med. Center,* 22 Kan. App. 2d 613, 617, 922 P.2d 1097, *rev. denied* 260 Kan. 991 (1996).

Exide investigated the incident between Inscho and her opponent. Petersen spoke to Inscho, her opponent, and two witnesses. Inscho admitted that she grabbed her opponent's hair and pulled her forward but maintains these acts were in self-defense. Exide terminated Inscho for her participation in the fight with her coworker. Inscho's counsel agreed with the trial court that "fighting" would not be construed as a legal term and Exide was within its rights to fire employees for fighting. The trial court did not err in granting summary judgment on the alternative theory that Exide did not act arbitrarily or without just cause in terminating Inscho.

Inscho's argument is that since it is controverted whether she acted in self-defense or whether she could retreat, this creates an issue of fact as to whether she was fighting. However, this argument injects legal terms from criminal law into the analysis. Her approach would turn every allegation of an implied contract into a criminal trial and require every employee manual to mirror the criminal code. This is contrary to the spirit of *Allsup* and related cases which focus the inquiry on whether the employer's action was arbitrary or within the bounds of the company policy, not the criminal code.

Inscho's unilateral expectation does not raise a fact question sufficient to withstand a motion for summary judgment. The defining facts in this case were Inscho's uncontroverted and admitted conduct of grabbing her opponent's hair and pulling her forward which constitutes participation in a fight. These actions violated Exide's written code of conduct and the trial court correctly determined that just cause supported the termination of Inscho's employment. The trial court did not err in granting summary judgment to Exide.

Affirmed.