**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 11 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

GUILLERMO SANJUAN,

      Plaintiff - Appellee,

v.

     No. 00-3098

IBP, INC.,

      Defendant - Appellant.

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 94-CV-1541)**

---

David O. Alegria, McCullough, Wareheim & LaBunker, P.A., Topeka, Kansas, for Plaintiff-Appellee.

Boyd A. Byers (Jack Focht, with him on the briefs), Foulston & Siefkin L.L.P., Wichita, Kansas, for Defendant-Appellant.

---

Before **TACHA** , Chief Judge, **REAVLEY** ,[*] and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

[*] The Honorable Thomas M. Reavley, Circuit Judge of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

Following a jury trial, IBP, Inc., was found to have retaliated against an employee, Guillermo Sanjuan, in violation of Kansas public policy, after Sanjuan exercised rights available to him under the Kansas Workers Compensation Act, Kan. Stat. Ann. §§ 44-501 to -5125. On appeal, IBP makes numerous allegations of error by the district court, including a refusal to grant judgment as a matter of law; issuance of legally erroneous jury instructions; and assessment of punitive damages despite insufficient evidence. The central issue presented is whether Kansas law requires a plaintiff seeking to recover on a workers compensation retaliatory discharge claim to demonstrate that he was able to perform his regular duties on the day he was discharged. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I

Sanjuan, a Mexican immigrant who has been in this country since he was a teenager, began working for IBP, "the world's largest producer of beef, pork and related allied products," at age twenty. Sanjuan v. IBP, Inc., 78 F. Supp. 2d 1195, 1198 (D. Kan. 1999) (Sanjuan II). There he performed the strenuous task of a flanker—that is, "remov[ing] the hide and flank off cattle by pulling up with an air knife to cut the hide with one hand and ripping the hide off with the other hand." (Appellant's Br. at 7–8.) In July 1992, after he began experiencing pain in his left arm, shoulder, and back, a company doctor diagnosed Sanjuan with

repetitive motion overuse syndrome and restricted him to such light duties as labeling boxes, stamping beef, and driving cattle with cattle prods.

Although Sanjuan had never been disciplined for his job performance prior to the injury, that soon changed. While he was on light duty, Sanjuan was written up ten times for alleged disciplinary violations. The district court explained:

> Supervisors refused to explain to Sanjuan, who spoke little English, the nature of the alleged violations . . . . Sanjuan testified that his supervisors failed to train him and explain how to do the light duty jobs. Sanjuan also testified that his supervisors mistreated him by yelling at him, threatening him if he did not return to his regular job, and not allowing him to seek medical care. At trial, Sanjuan's supervisors denied any mistreatment and said that Sanjuan was written up for mistakes he made on the job.
> On December 23, 1992, Sanjuan was driving cattle through a chute, using a cattle prod to keep the line moving. A cow fell down, causing the line to stop for five minutes. Sanjuan testified that the cow slipped and fell due to moisture in the chute. . . . IBP supervisors testified that Sanjuan over-shocked the cow, and had been warned about over-shocking cattle in the past. Sanjuan testified that he had not been warned about over-shocking cattle.

Sanjuan v. IBP, Inc., 90 F. Supp. 2d 1208, 1210 (D. Kan. 2000) (Sanjuan III). On December 23, 1992, Sanjuan was fired.

Sanjuan brought this suit, claiming he was discharged in retaliation for exercising his rights under the Kansas Workers Compensation Act. A trial resulted in a $39,076 judgment for Sanjuan, which this Court reversed on the basis of erroneous admission of hearsay evidence. Sanjuan v. IBP, Inc., 160 F.3d 1291, 1296–98 (10th Cir. 1998) (Sanjuan I). On retrial, the jury returned another

-3-

verdict for Sanjuan, this time for $99,532, and found that Sanjuan was entitled to an award of punitive damages. Based on that verdict, the district court awarded Sanjuan $200,000 in punitive damages. Sanjuan II, 78 F. Supp. 2d at 1198.

On appeal, IBP challenges the district court's judgment, claiming (1) that the district court should have granted its motion for judgment as a matter of law because the uncontroverted evidence at trial was that plaintiff could not return to his regular job on the day he was fired without violating his medical restrictions; (2) that the district court should have granted its motion for a new trial because the jury instructions failed to apprise the jury that its verdict on whether plaintiff could return to his regular job must be based on medical restrictions and not plaintiff's personal belief; and (3) that the district court's assessment of punitive damages should be vacated because Sanjuan failed to prove by clear and convincing evidence that an IBP agent or employee authorized or ratified the retaliation against him.

**II**

At the outset, IBP makes the remarkable claim that under Kansas law, an employee must prove that he is "able to perform the duties of his regular job . . . within his medical restrictions at the time he was discharged." (Appellant's Br. at 10.) Because Sanjuan did not meet this burden, says IBP, the district court erred in denying its motion for judgment as a matter of law. We review the denial of

-4-

judgment as a matter of law de novo and apply the same standard as the district court—that is, whether "the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Baty v. Willamette Indus., Inc., 172 F.3d 1232, 1241 (10th Cir. 1999) (quotation omitted).

The employment-at-will doctrine, which holds that employment is terminable at the will of the employer or the employee, "has . . . eroded in Kansas and in other states," Ortega v. IBP, Inc., 874 P.2d 1188, 1191 (Kan. 1994), to the point that "Kansas now recognizes two exceptions to this rule." Stover v. Superior Indus. Int'l, Inc., 29 P.3d 967, 970 (Kan. Ct. App. 2000). "The first exception is for terminations that violate public policy. The second exception is for an implied-in-fact contract." Id. (citation omitted). The present controversy falls into the former category.

"Under Kansas law, an employer cannot fire an employee in retaliation for that employee filing a workers' compensation claim; the filing of such a claim represents the protected exercise of a statutory right." Bausman v. Interstate Brands Corp., 252 F.3d 1111, 1115 (10th Cir. 2001). The Kansas Court of Appeals has observed, "To allow an employer to coerce employees in the free exercise of their rights [under the Workers Compensation Act] would substantially subvert the purpose of the act." Murphy v. City of Topeka, 630 P.2d 186, 192 (Kan. Ct. App. 1981).

Workers compensation retaliatory discharge cases are analyzed under a burden-shifting approach. Rebarchek v. Farmers Coop. Elevator & Mercantile Ass'n, No. 82,662, 2001 WL 1555881, at *6 (Kan. Dec. 7, 2001). A plaintiff makes a prima facie claim by showing (1) that he filed a claim for workers compensation benefits or sustained an injury for which he might assert a future claim for such benefits; (2) that the employer had knowledge of the compensation claim or the fact that he sustained a work-related injury for which the plaintiff might file a future claim for benefits; (3) that the employer terminated the plaintiff's employment; and (4) that a causal connection existed between the protected activity or injury and the termination. Sanjuan I, 160 F.3d at 1298, cited in Rebarchek, 2001 WL 1555881, at *7. The burden then shifts to the employer to show "an articulate, non-retaliatory reason for the discharge." Bausman, 252 F.3d at 1116 (citation omitted). "If the employer meets this burden, the burden shifts back to the plaintiff but the plaintiff must show clear and convincing evidence that he or she was terminated in retaliation for exercising rights under the Workers' Compensation Act." Id. (quotation omitted).[1]

The mechanics of a workers compensation retaliatory discharge case are

---

[1] But cf. Rebarchek, 2001 WL 1555881, at *6 (concluding that a plaintiff "need not meet the clear and convincing standard at the summary judgment stage of the proceedings").

such that an employer may avoid liability by demonstrating that the discharge was motivated by the employee's inability to return to his duties, rather than because the employee exercised his rights under the Workers Compensation Act. It does not follow, however, that retaliatory animus can never exist if the discharged employee is unable to perform his duties at the time he was fired. Several Kansas cases are instructive on this proposition, beginning with Griffin v. Dodge City Cooperative Exchange, 927 P.2d 958 (Kan. Ct. App. 1996).

In Griffin, plaintiff was injured while operating heavy machinery and was diagnosed with degenerative disc disease, a condition made symptomatic by the accident. Permanent medical restrictions limited plaintiff to "driving about 2 hours at a time, with frequent breaks . . . , lifting up to 50 pounds, limited bending and stooping. No driving on rough terrain, no bumpy roads, no driving heavy equipment." Id. at 961 (quotation omitted). "By his own estimate, [plaintiff] could perform only 5% to 10% of the job duties he was performing prior to his injury." Id. The Plaintiff was consequently discharged, and he sued his employer for retaliatory discharge. The district court granted the employer's motion for summary judgment. On appeal, the plaintiff claimed summary judgment was improper because he was "'ready, willing and able' to resume his job," in spite of his medical restrictions. Id. at 962. The Kansas Court of Appeals disagreed on the bases that the claim was not raised in the lower court,

there actually was no evidence that plaintiff was "ready, willing, and able" to return to his job, and nothing in a statute cited by plaintiff—a statute which is not at issue in the instant matter—"indicates that an employer can force an employee, or an employee can elect, to return to a position beyond his or her medical restrictions." Id. at 962–63. The plaintiff also argued that "Kansas law prohibits an employer from firing an employee with a work-related injury unless the employee is 'incapable of performing the duties of any jobs available to him based upon his physical restrictions.'" Id. at 963. This claim, too, was rejected because "the tort of retaliatory discharge does not require employers to consider or find alternative employment for an injured employee who is unable to return to his or her former position." Id. at 965.

Later cases sharpened Griffin's focus. In Gertsch v. Central Electropolishing Co., 26 P.3d 87, 89 (Kan. Ct. App. 2001), the Kansas Court of Appeals distinguished Griffin on the basis that the plaintiff, unlike Griffin, "did not sue [the employer] because it failed to find him another job or accommodate him but because he was fired in retaliation for pursuing a workers compensation claim." The court said,

> [W]e believe that it is contrary to the public policy of Kansas for an employer to intentionally terminate an injured employee for filing a workers compensation claim before adequate evidence exists that the injured employee will be unable to perform his or her former job. If evidence later develops that the injured employee cannot return to his or her former job, this evidence could be relevant on the issue of

-8-

damages.

Id. at 90 (emphasis added). Similarly, in Thidsorn v. Excel Corp., 8 P.3d 49, 50 (Kan. Ct. App. 2000), the Kansas Court of Appeals held that "Griffin is not applicable where evidence of retaliatory motive is also presented." Id. at 51 (citing Sanjuan III).

IBP's assertion—that "plaintiff cannot prevail on his retaliatory discharge claim unless he was able to perform the duties of his regular job . . . within his medical restrictions at the time he was discharged" (Appellant's Br. at 10 (emphasis added))—stems from a strained reading of Griffin and fails to adequately account for later cases.

> It would be anomalous . . . to hold an employer may not fire an employee in retaliation for filing a workers' compensation claim, and then to hold an employer can fire an employee for inability to return to his former job which is due to injuries that are the basis for the workers' compensation claim.

Sanjuan III, 90 F. Supp. 2d at 1212. Under IBP's proposed regime, "[t]he only injured workers that would be safe from employer retaliation would be those with minor injuries who could immediately return to their position." Id. In the final analysis, one asks, "What was IBP's motive for firing Sanjuan?" That question belongs to the jury, which found that IBP "discharged . . . Sanjuan in retaliation for exercising his rights under the Workers Compensation Act." (1 Appellant's App. at 205.) The district court concluded that Sanjuan presented sufficient

evidence of retaliatory motive, Sanjuan III, 90 F. Supp. 2d at 1213–14, and that conclusion is not challenged on appeal. Moreover, the evidence cited by IBP—its knowledge that Sanjuan's treating doctor classified his restrictions as "indefinite" (2 Appellant's App. at 579)—hardly amounts to conclusive evidence that its motivation for firing Sanjuan was that he would be unable to return to his flanker job. The district court correctly denied IBP's motion for judgment as a matter of law.

### III

IBP makes the further claim that it is entitled to judgment as a matter of law because "[w]ages lost as a result of work injuries . . . are not recoverable in an action for retaliatory discharge." (Appellant's Br. at 23.) This argument, too, must fail.

Although an employer may not discharge an employee in retaliation for exercising his workers compensation rights, evidence that the injured employee would have been unable to return to his former job could be relevant on the issue of damages. Gertsch, 26 P.3d at 90. "Damages for injuries arising in the scope of employment are recoverable only under the Workers' Compensation Act. A plaintiff may not recover wages in a retaliatory discharge action for a period of time during which he receives temporary total disability compensation." Sanjuan I, 160 F.3d at 1300 (citing Hill v. IBP, Inc., 881 F. Supp. 521, 525 (D. Kan.

1995)).  IBP claims that "[b]ecause plaintiff has been unable to work in his flanker job since the time of his discharge because of his restrictions—and, moreover, affirmatively claims in his workers compensation case that he is permanently unable to return to work for IBP in any capacity—he cannot recover lost wages." (Appellant's Br. at 23–24.)  This is IBP's potential-for-double-recovery argument.

To begin with, we reject IBP's argument that the jury was bound by Sanjuan's medical restrictions, rather than his "self-assessment" that he was fit to return to work.  (Id. at 15.)  Even if we assume that a plaintiff's self-assessment about his ability to return to work has little or no probative value if there is clear evidence that he cannot return to his regular post,[2] such is not the nature of this case.  See Griffin, 927 P.2d at 961–62.  The evidence at trial showed Sanjuan's medical restrictions were not permanent, but "indefinite."

Nevertheless, IBP suggests that Sanjuan be estopped from claiming he could return to his regular duties because he took a prior inconsistent position in this litigation.  However, IBP points us to no place in the record where Sanjuan asserts he could never return to his regular position as flanker.  Contrary to IBP's

_____

[2]  For example, in Griffin plaintiff had degenerative disc disease and admitted that he could perform only five to ten percent of his duties.  As discussed above, the court of appeals rejected plaintiff's "self-assessment" argument because, among other things, there was no evidence that he was in fact "ready, willing and able" to resume his job.  Griffin, 927 P.2d at 961–63.

-11-

assertion, Sanjuan did not state that "he was permanently unable to perform work for IBP" (Appellant's Br. at 21) in his application for a worker's compensation hearing; rather, he merely stated that he "intend[ed] to address" the issues of "Temporary total compensation," "Medical treatment," and "Vocational Rehabilitation." (2 Appellant's App. at 475 (emphasis added).) Apparently, every box on the form was checked, a "universal" practice according to the testimony of a former IBP senior litigation attorney who was employed by IBP during 1992. (Appellee's Supplemental App. at 18, 21–22 ("It was common to mark all three of them, universally done, and some law firms did it regularly.").)

## IV

Appellant filed a motion for a new trial under Fed. R. Civ. P. 59(a), claiming that the district court erred in not instructing the jury that its finding whether plaintiff could have returned to his regular flanker position must be based on his medical restrictions (not plaintiff's self-assessment) and cannot assume any assistance or modification to the job. The district court's denial of the motion for a new trial is reviewed under an abuse of discretion standard. Anaeme v. Diagnostek, Inc., 164 F.3d 1275, 1284 (10th Cir.), cert. denied, 528 U.S. 814 (1999).

Appellant challenges the following jury instruction:

> Under Kansas law, an employer is not required to consider or find alternative employment for an injured employee who is unable to

> return to his or her former position. Thus, an employer cannot be sued for retaliatory discharge simply because it failed to consider another position or <u>to modify a job to accommodate an injured employee</u>.
>
> If you find that Guillermo Sanjuan could not return to his regular position as a flanker, then you must find for the defendant. If you find that Guillermo Sanjuan could return to his regular position as a flanker, then you must determine whether his termination was based on retaliation.

(1 Appellant's App. at 169 (Instruction No. 9) (emphasis added).) A corresponding question on the verdict form asked: "Do you find that plaintiff Guillermo Sanjuan could have returned to his regular position as a flanker?" (<u>Id.</u> at 204.) The jury answered that question in the affirmative.

IBP's claim that "[t]he instruction . . . failed to explain that the jury must not consider any accommodation or modification to the job in determining whether plaintiff could have returned to his flanker job" (Appellant's Br. at 27) is obviously without merit. The instruction does in fact explain that point. Moreover, IBP's contention that the jury instruction did not apprise the jury that its finding of whether Sanjuan could have returned to his regular position was controlled by his medical restrictions must fail for the reasons stated in Part III of this Opinion.

## V

Finally, IBP challenges the punitive damages award. It argues, "Plaintiff cannot recover punitive damages as a matter of law because he failed to prove by

-13-

clear and convincing evidence, and the jury did not find, that an IBP agent or employee, with express power to do so, authorized or ratified retaliation against plaintiff." (Id. at 28.)

As stated above, IBP is "the world's largest producer of beef, pork and related allied products." Sanjuan II, 78 F. Supp. 2d at 1198. Yet for all its success and correlative economic power, IBP has been party to an inordinate number of retaliatory discharge cases in this Circuit in recent years. See, e.g., Rodriguez v. IBP, Inc., 243 F.3d 1221 (10th Cir. 2001); Sanjuan I, 160 F.3d 1291; Rodriguez v. IBP, Inc., No. 96-3159, 1998 WL 426797 (10th Cir. July 20, 1998); Ramirez v. IBP, Inc., No. 97-3111, 1998 WL 257161 (10th Cir. May 21, 1998); Chaparro v. IBP, Inc., Nos. 95-3078, 95-3098, 1996 WL 733771 (10th Cir. Dec. 24, 1996); Velazquez v. IBP, Inc., No. 95-3239, 1996 WL 594280 (10th Cir. Oct. 17, 1996); Lawrence v. IBP, Inc., No. 95-3278, 1996 WL 508423 (10th Cir. Sept. 9, 1996); Tovar v. IBP, Inc., Nos. 94-3263, 94-3384, 1996 WL 282289 (10th Cir. May 29, 1996).

In granting punitive damages, the district court stated:

> Given IBP's history of policies which encourage retaliation against injured workers, a specific policy is necessary to make it clear that IBP does not tolerate such conduct. This is particularly true when supervisors have not been disciplined for retaliating against an injured worker. No one was disciplined for the decision to fire Sanjuan. Two juries found that IBP retaliated against Sanjuan, and one jury found that IBP's conduct was serious enough to warrant punitive damages. . . . At the punitive damage hearing, several IBP

officials testified that they were not aware of any supervisors who were fired due to retaliation against injured workers.

. . .

[T]he court believes an award of $200,000 is sufficient to restrain defendant from similar conduct and deter others from retaliating against injured workers.

Sanjuan II, 78 F. Supp. 2d at 1197–98.

That said, Kansas law does not permit assessment of punitive damages against a principal or employer for the acts of an agent or employee unless the questioned conduct was "authorized or ratified by a person expressly empowered to do so on behalf of the principal or employer." Kan. Stat. Ann. § 60-3702(d)(1). IBP seeks vacation of the punitive damages award because "[p]laintiff never requested a jury instruction explaining that the jury could not award punitive damages unless it found that an IBP agent or employee, with express power to do so, authorized or ratified the alleged retaliation against plaintiff." (Appellant's Br. at 28.) According to Fed. R. Civ. P. 51, "No party may assign as error the giving or failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds for the objection." IBP fails to state the precise reference in the record where it objected to the jury instructions on this matter, see 10th Cir. R. 28.2(C)(2), (C)(3)(b), and we thus reject this claim. Jetcraft Corp. v. Flight Safety Int'l, 16 F.3d 362, 366 (10th Cir. 1993).

In the alternative, IBP argues that "no reasonable jury could find that any

-15-

person employed by IBP, with express power to do so, authorized or ratified malicious, willful, or wanton retaliatory conduct against plaintiff." (Appellant's Br. at 29.)  Sanjuan answers that IBP "did not raise this issue at the trial level and cannot now raise it for the first time on appeal." (Appellee's Br. at 40.) Although that is an overstatement—the record demonstrates that it was raised in the district court after the jury returned its verdict (1 Appellant's App. at 209)—IBP fails to "cite the precise reference in the record" where it moved for judgment as a matter of law prior to the close of evidence on this particular issue. 10th Cir. R. 28.2(C)(2).  It is well-established that failure to move for judgment as a matter of law on an issue at the conclusion of evidence at trial precludes review of that issue on appeal.  Smith v. Northwest Fin. Acceptance, Inc., 129 F.3d 1408, 1415–16 (10th Cir. 1997).  We reject IBP's evidence sufficiency challenge to punitive damages on this basis.[3]

## VI

The judgment of the district court is **AFFIRMED.**

---

[3]  We further note that IBP failed to provide the Court with the entire relevant trial transcript.  Tenth Circuit Rule 10.1(A)(1) provides, "The appellant must provide all portions of the transcript necessary to give the court a complete and accurate record of the proceedings related to the issues on appeal."  "When sufficiency of the evidence is raised, the entire relevant trial transcript must be provided."  10th Cir. R. 10.1(A)(1)(a).