FILED
United States Court of Appeals
Tenth Circuit

October 28, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JACKIE R. WILKINS,

        Plaintiff - Appellant,

v.

KMART CORPORATION,

        Defendant - Appellee.

No. 07-3208
(D.C. No. 05-CV-4074-SAC)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **SEYMOUR**, and **PORFILIO**, Circuit Judges.

Jackie R. Wilkins filed this workers' compensation retaliatory discharge

case against Kmart Corporation, alleging Kmart terminated his employment for

incurring absences necessitated by a work-related injury. The district court

denied cross-motions for summary judgment, a trial was held, and the jury

returned a verdict for Kmart. Mr. Wilkins then filed a motion for judgment as a

matter of law or for a new trial. The district court denied the motion. On appeal,

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Mr. Wilkins challenges the district court's denial of his summary judgment motion and post-trial motion and takes issue with the jury instructions. For the reasons set forth below, we **AFFIRM**.

## I.

Because the parties are familiar with the facts, we need not repeat them in great detail. Kmart employed Mr. Wilkins for a little over three months at one of its distribution centers. He was hired and began work on March 11, 2003, working third shift, from 11:15 p.m. to 7:15 a.m, unloading boxes and other inventory from incoming trailers. Kmart terminated his employment on June 26, 2003, for excessive absenteeism.

During the first ninety days of his employment, Mr. Wilkins was considered a probationary employee. During the probationary period, employees are not allotted a specified amount of paid or unpaid time off; instead, overall performance is evaluated at the end of the probationary period. After satisfactorily completing the period, employees receive a bank of sixteen hours' paid leave and eight hours' unpaid leave.[1]

Kmart requires employees to obtain a written pass to leave work during a shift. Passes issued to employees who leave for matters related to a work injury

---

[1]     Under Kmart's bank of hours attendance policy, Kmart will terminate an employee if he has chargeable absences that exceed his bank of hours. An absence related to a workers' compensation injury, other protected absences, and leave covered by other policies (for example, vacation or bereavement) are not charged against the bank of hours or otherwise counted against the employee.

state "occupational." When an employee needs to leave because of a work injury, supervisors report up the chain of command to ensure the human resources department is notified, and the absence is coded into Kmart's computer system as "occupational." If, on the other hand, an employee reports he is not feeling well, the pass will state "ill." When an employee must miss an entire day of work, he is required to call a reporting line in advance of his shift. The human resources department reviews the call-in information to determine whether an absence will be treated as an illness, as occupational, or otherwise.

On April 17, Mr. Wilkins notified his supervisor he was having problems with his right wrist, neck and/or shoulder. He attributed his problems to an accident that had occurred several weeks earlier, in late March, when he dropped a box. Mr. Wilkins's statement was taken, an accident investigation report was prepared, and Kmart arranged for Mr. Wilkins to see a doctor. Doctor Bock diagnosed Mr. Wilkins with a neck strain and tendonitis in the right wrist, and he prescribed Mr. Wilkins a muscle relaxer, Flexeril.

Between April 18 and the end of May, Mr. Wilkins left work early once, on April 22, saying his work injury was causing him pain. Kmart coded this absence as "occupational." Aplee. App. at 423, 506. Mr. Wilkins left his shift early on June 2, 10, and 12, each time saying he was "ill," which was recorded as such on the corresponding building passes. *Id.* at 507, 510. He also called in on June 11, without providing a reason. *Id.* at 506.

-3-

On June 16, Kmart determined Mr. Wilkins had satisfactorily completed his ninety-day probationary period, and he received a bank of sixteen hours' paid leave and eight hours' unpaid leave, to be used for chargeable absences through September 11, 2003. Mr. Wilkins exceeded his bank of hours due to absences on June 17, 23, 24, and 25. When Martha Oelschlaeger, a Kmart human resources generalist, told Mr. Wilkins he had exceeded his bank and would be terminated, he claimed his absences were because of problems with the medication prescribed for his workers' compensation injury. Ms. Oelschlaegar put the termination on hold and investigated his claim. After interviewing members of the management team she determined his recent absences were not related to his work injury. She reviewed her findings with her superiors who agreed Mr. Wilkins should, consistent with Kmart policy, be discharged. On June 26, Ms. Oelschlaeger advised Mr. Wilkins that Kmart was terminating him for exceeding his bank of hours.

Mr. Wilkins filed this lawsuit in 2005. The district court denied the parties' cross-motions for summary judgment, concluding trial would be appropriate. In particular, the court stated:

> After hearing all the testimony and evidence presented and after
> evaluating the credibility of the witnesses, it is for the finder of fact
> to resolve whether the defendant actually disbelieved the plaintiff's
> claimed reason for the absences and fired him for exceeding the bank
> of hours or whether the defendant's expressed disbelief was a mere

-4-

pretext for discharging him in retaliation for his absences caused by the work-related injury.

Aplt. App., Vol. II at 308-09.

A jury trial was held in April 2007 and the jury returned a verdict for Kmart, finding it did not "retaliatorily discharge . . . [Mr. Wilkins] because he had exercised or might exercise his statutory rights under the Workers' Compensation Act." *Id.* at 357 (verdict form). Mr. Wilkins filed a motion for judgment as a matter of law (JMOL) or for a new trial under Federal Rules of Civil Procedure 50(b) and 59(a), respectively. He asserted the evidence was overwhelmingly in his favor, citing the timing of his firing and his "articulated reasons for his absences from work," *id.* at 372, and contended "[e]ither prejudice, bias or lack of understanding caused the jury to reach a conclusion that was entirely contrary to the evidence," *id.* at 373. Kmart countered that there was evidence presented at trial from which the jury could find Mr. Wilkins failed to establish: "his absences were in fact related to his work comp injury, . . . Kmart knew or should have known those absences were work comp related, and . . . Kmart acted out of some retaliatory motive in discharging [him]." *Id.* at 376-78 (citing *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875-76 (10th Cir. 2004) (explaining how to prove the causal-connection element of prima facie claim for retaliatory discharge)).

The district court denied Mr. Wilkins's motion for JMOL or for a new trial, explaining:

> the evidence was sufficient for the jury to find that the plaintiff's absences in question were not due to medication taken for his work injury. There was considerable evidence at trial that placed into question the credibility of the plaintiff's testimony on the reason for his absences. His testimony was contradicted by Dr. Bock's testimony on the treatment received by plaintiff, the evaluation of the plaintiff's medical record, and the prescribed use of Flexeril. There is also the other circumstantial evidence, including the plaintiff's delayed side effects from the Flexeril, the plainitff's excellent attendance record in May, and his failure to report any medication problems to his workers' compensation contact, Ms. Oeschlaeger, until after being notified of his termination. For that matter, the jury properly could have found that the planitff's own testimony on his need for and use of Flexeril lacked the consistency and details on which to base a verdict favorable to the plaintiff.

Aplt. App., Vol. II at 400-01. This appeal followed.

## II.

Mr. Wilkins seeks review of the district court's denial of his summary judgment motion. We generally have jurisdiction only over "final decisions of the district courts." 28 U.S.C. § 1291. "To be final, a decision ordinarily ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Mesa Oil, Inc. v. United States*, 467 F.3d 1252, 1254 (10th Cir. 2006) (quotation omitted). "Indeed, this court has held that the denial of summary judgment based on factual disputes is not properly reviewable on an appeal from a final judgment entered after trial." *Haberman v. Hartford Ins. Group*, 443 F.3d 1257, 1264 (10th Cir. 2006) (citing *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248,

1250-51 (10th Cir. 1992)).  Thus, "even if summary judgment was erroneously denied, the proper redress [is] not . . . through appeal of that denial but through subsequent motions for judgment as a matter of law . . . and appellate review of those motions if they were denied."  *Whalen*, 974 F.2d at 1251.  Accordingly, while we will not review the denial of Mr. Wilkins's summary judgment motion, we will "reach the substance of [his] argument[]"–that he demonstrated a causal connection between his protected activity and termination–"in our review of the district court's denial of [his post-trial motions]."  *Snyder v. City of Moab*, 354 F.3d 1179, 1184 n.2 (10th Cir. 2003).

We review de novo the district court's denial of a Rule 50(b) motion, drawing "all reasonable inferences in favor of the nonmoving party," here, Kmart. *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1112 (10th Cir. 2004) (quotation omitted).  We will reverse the district court's "refusal to grant JMOL . . . only . . . if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion."  *Id.* (quotation omitted).  We review for abuse of discretion the district court's denial of a motion for a new trial under Rule 59(a).  *Sanjuan v. IBP, Inc.,* 275 F.3d 1290, 1297 (10th Cir. 2002).  Where, as here, "a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence."  *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999) (quotations omitted).  In diversity

cases like this one, federal law governs whether JMOL or a new trial is appropriate, *Haberman*, 443 F.3d at 1264 (JMOL); *Blanke v. Alexander*, 152 F.3d 1224, 1235-36 (10th Cir. 1998) (new trial), but the substantive law of the forum state governs analysis of the underlying claim, *see Haberman*, 443 F.3d at 1264.

> The elements of a prima facie claim for retaliatory discharge for filing a workers compensation claim are: (1) The plaintiff filed a claim for workers compensation benefits or sustained an injury for which he or she might assert a future claim for such benefits; (2) the employer had knowledge of the plaintiff's workers compensation claim injury; (3) the employer terminated the plaintiff's employment; and (4) a causal connection existed between the protected activity or injury and the termination.

*White v. Tomasic*, 69 P.3d 208, 211-12 (Kan. App. 2003) (citing *Rebarchek v. Farmer Coop Elevator*, 35 P.3d 892, 899 (Kan. 2001)).

> To establish the requisite causal connection, a plaintiff must prove an unlawful intent on the part of the employer to terminate her because she had filed a workers' compensation claim or had sustained a work-related injury for which she might file such a claim. The mere act of firing an injured employee for excessive absences or for violation of an absenteeism policy does not implicate an improper retaliatory motive, particularly when the decision-makers were not aware that the absences were due to work-related injuries.

*Bones*, 366 F.3d at 876.

In challenging the district court's denial of his motion for JMOL or for a new trial, Mr. Wilkins focuses on causation. He cites the timing of his termination and asserts, in conclusory fashion, "there is not a scintilla of evidence favoring defendant." Aplt. Opening Br. at 35. In his reply brief, without any record reference, he states he "testified that he clearly expressed to his

supervisors that his need to leave work was because of his injuries." Aplt. Reply Br. at 5-6. While Mr. Wilkins's trial testimony, *provided by Kmart*, supports his assertion that he testified in this manner, the jury heard ample evidence supporting Kmart's contention it had no "unlawful intent" to discriminate. *See Bones*, 366 F.3d at 876. As such, Mr. Wilkins cannot meet the standards applicable to a motion for JMOL or for a new trial.

Finally, Mr. Wilkins takes issue with the jury instructions, alleging the jury "was unable or unwilling to reach the unescapable conclusion from the evidence, was incorrectly instructed[,] or incorrectly applied the law to the facts." Aplt. Opening Br. at 36. His argument is entirely devoid of legal authority and evidentiary support. "In the absence of [necessary] specifics, we can afford no relief." *DeLozier v. Sirmons*, 531 F.3d 1306, 1329 (10th Cir. 2008) (citing Fed. R. App. P. 28(a)(9)(A)). Further, his "attempt to expand [his] argument," by asserting for the first time in his reply brief that jury instruction number sixteen was legally incorrect, is a theory we decline to consider. *See Vaughn v. Epworth Villa*, 537 F.3d 1147, 1153 n.5 (10th Cir. 2008) ("'This court does not ordinarily review issues raised for the first time in a reply brief' and to the extent these allegations attempt to expand the arguments made in [plaintiff's] primary brief, we decline to consider them here.") (quoting *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000)).

## III.

The judgment of the district court is **AFFIRMED**.

Entered for the Court


John C. Porfilio
Circuit Judge