**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 16 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GUILLERMO SANJUAN,

      Plaintiff-Appellee-
      Cross-Appellant,

v.

IBP, INC.,

      Defendant-Appellant-
      Cross-Appellee.

Nos. 96-3326 and 96-3327

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 94-CV-1541)**

David O. Alegria of McCullough, Wareheim & LaBunker, P.A., Topeka, Kansas, for Plaintiff-Appellee-Cross-Appellant.

Jack Focht of Focht, Hughey & Calvert, L.L.C., Wichita, Kansas, for Defendant-Appellant-Cross-Appellee.

Before **BALDOCK, HOLLOWAY** and **MURPHY,** Circuit Judges.

**HOLLOWAY,** Circuit Judge.

Plaintiff-Appellee-Cross-Appellant Guillermo Sanjuan ("Sanjuan") filed suit on

December 12, 1994, in the United States District Court for the District of Kansas against

Defendant-Appellant-Cross-Appellee IBP, Inc. ("IBP"), alleging that IBP terminated Sanjuan's employment in retaliation for Sanjuan's work-related injury. The district court had diversity jurisdiction of the case pursuant to 28 U.S.C. § 1332. The case was tried before a jury, which found in favor of Sanjuan. Both parties filed post-trial motions, all of which were denied by the district court.

IBP appeals the district court's judgment, claiming error in the denial of its motion for a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure [1] and its renewed motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.[2] Sanjuan cross-appeals, claiming error in the district court's refusal to submit Sanjuan's proposed jury instruction to the jury, in the verdict form submitted to the

---

[1]Fed. R. Civ. P. 59(a) provides:

A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . .

[2]Fed. R. Civ. P. 50(a) provides:

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue, the court may determine the issue against the party and may grant a motion for judgment as a matter of law against that party with respect to any claim or defense that cannot under controlling law be maintained or defeated without a favorable finding on that issue.

We note that IBP moved the court for a judgment as a matter of law pursuant to Rule 50(a) at the close of all of the evidence. I App. at 167. Thus, IBP complied with the procedural requirement for filing a renewed motion for judgment as a matter of law pursuant to Rule 50(a) and Rule 50(b).

jury, and denial of his motion for an additur. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We reverse and remand for a new trial, but affirm the rulings which Sanjuan's cross-appeal challenges.

## BACKGROUND

Sanjuan began his employment with IBP as a flanker in 1991 at IBP's Holcomb, Kansas, plant.[3] Initially, Sanjuan did not have any problems with his supervisors. In late May 1992, Sanjuan experienced pain in his shoulder, arm, and back while working as a flanker. III App. at 708. Sanjuan visited IBP's company nurse for treatment for his pain between May 1992 and June 1992. He eventually saw a doctor and Sanjuan was restricted to "light work." III App. at 711-12. Sanjuan's IBP supervisor was aware of his physical problem and restrictions.

Sanjuan testified that after he was assigned to light duty, his supervisors mistreated him by writing him up for disciplinary violations without explaining to Sanjuan (who spoke little English) the substance of the violations to him and by yelling at Sanjuan to return to the flanker job. III App. at 729-30, 731-32. Sanjuan testified that IBP supervisors threatened him if he did not return to the flanker job. III App. at 735-36. At trial, IBP supervisors denied that they mistreated Sanjuan and said that each disciplinary action they took was in response to a mistake in job performance by Sanjuan. II App. at 345.

---

[3]A flanker is one who removes the hide and hair from carcasses of cattle that have been slaughtered. III App. at 704-05.

Among the duties to which Sanjuan was assigned was driving cattle through a chute. This duty required Sanjuan to drive cattle through a chute, using a prod to keep the cattle moving. III App. at 727. On December 23, 1992, Sanjuan was working in the chute when a cow fell down, causing the line of cattle to stop for five minutes. Sanjuan testified that the cow slipped because of moisture in the chute. III App. at 762-64. Doug Bolton, an IBP supervisor, testified that he had seen cattle accidently slip in the chute, and had seen cattle enter the chute covered with snow and mud. IBP supervisors testified that Sanjuan over-shocked the cow with the cattle prod. II App. at 451. IBP contends that Sanjuan had been warned about over-shocking the cattle prior to the December 23, 1992, incident. However, Sanjuan testified that he had not been warned about over-shocking cattle.

Following the December 23 incident, Ron Christy, an IBP supervisor, made a written disciplinary report on Sanjuan. IV App. at 1092. After reviewing the report on the December 23, 1992, incident and noting that Sanjuan's record contained two previous written warnings,[4] the IBP Personnel Manager, Minh Duong, decided to discharge Sanjuan. Duong had knowledge that Sanjuan had been injured while working for IBP. II App. at 545. IBP terminated Sanjuan's employment on December 23, 1992. IV App. at 1092. Sanjuan was never disciplined prior to his work-related injury for job performance. III App. at 592; II App. at 211-12.

_____

[4]Sanjuan had received written warnings on September 11 and September 28, 1992, for improperly driving cattle. III App. at 591.

Sanjuan brought suit on December 12, 1994, alleging retaliatory termination of his employment. Before trial, IBP filed a motion *in limine* to exclude: (1) evidence that IBP personnel directors had heard complaints from other employees that IBP mistreats injured workers; (2) evidence of IBP's accident-free incentive programs; and (3) evidence of IBP's "cost per injury" goals for work injuries. I App. at 28-29. The district court made a preliminary ruling excluding the evidence. However, at trial, the court allowed Sanjuan's counsel to question Duong on other employees' complaints and the accident-free incentive program, over IBP's objection. III App. at 571, 583, 586. Duong testified that he had heard some complaints from employees about a practice of IBP harassing and mistreating injured employees. III App. at 583. Duong also testified that as part of the accident-free incentive program, groups of employees would receive prizes if no injuries were reported in the group for a period of time. III App. at 587. Sanjuan's counsel introduced testimony from Doug Bolton, another IBP supervisor, who said that IBP had set a specific annual goal that is an average cost of workers' compensation for all employees. III App. at 681-82. Bolton said that he had been informed that upper extremity injuries were costly to IBP. Id.

The jury found for Sanjuan and awarded him damages in the amount of $19,074 for lost past wages, $928 for loss of past fringe benefits, and the sum of $19,074 for embarrassment, humiliation and emotional distress, for a total recovery of $39,076. I App. at 166. The jury did not award punitive damages. The judgment entered on this verdict is the subject of the appeal by IBP.

## DISCUSSION

### A

**Whether the District Court Erred in Denying IBP's Motion for a New Trial Because Evidence Admitted Over Objection Supporting the Jury Verdict In Favor of Sanjuan Was Inadmissible.**

IBP argues that its Rule 59 motion for a new trial should have been granted because the district court erred in allowing the jury to hear evidence of (1) complaints by other employees; (2) IBP's accident-free incentive program; and (3) IBP's workers' compensation cost goals. IBP contends the evidence was inadmissible because it was irrelevant, its probative value outweighed by its prejudicial effect, and it constituted hearsay and impermissible character evidence.

We review denial of a motion for a new trial for abuse of discretion. Unit Drilling Co. v. Enron Oil & Gas Co., 108 F.3d 1186, 1193 (10th Cir. 1997); Patton v. TIC United Corp., 77 F.3d 1235 (10th Cir. 1996), cert. denied, 116 S. Ct. 2525 (1996). Because the issue whether a new trial ought to be granted hinges on the admissibility of evidence, our determination will be governed by our review of the admission of the evidence for abuse of discretion. United States v. Quitana, 70 F.3d 1167, 1170 (10th Cir. 1995). If error is found in the admission of evidence, we will set aside a jury verdict only if the error prejudicially affects a substantial right of a party. Hinds v. General Motors Corp., 988 F.2d 1039, 1049 (10th Cir. 1993). Evidence admitted in error can only be prejudicial "if it can be reasonably

concluded that with or without such evidence, there would have been a contrary result." Id. (citing Smith v. Atlantic Richfield Co., 814 F.2d 1481 (10th Cir. 1987)).

## 1. Other Employees' Complaints

The district court admitted, over hearsay objections, testimony of two IBP supervisors, Duong and Bolton, that they heard complaints by injured employees to the effect that they were harassed and mistreated following their injuries or claims for medical benefits. III App. at 583, 667, 670. IBP argues this evidence was hearsay, impermissible character evidence and irrelevant.

We reject IBP's contention that mistreatment of other employees in similar circumstances is irrelevant and prejudicial. Because an employer will rarely admit retaliatory motives in firing an employee, retaliatory discharge cases generally must be proven by circumstantial rather than direct evidence. See Chaparro v. IBP, Inc., 873 F. Supp. 1465, 1472 (D. Kan. 1995).

We also reject IBP's assertion that other employee's complaints constitute impermissible character evidence. Evidence of prior acts is generally not admissible to prove the character of a person or to show the person acted in conformity therewith. Fed. R. Evid. 404(b). However, character evidence is admissible in civil trials to show motive or intent. Id.; see also Spulak v. K Mart Corp., 894 F.2d 1150, 1156 (10th Cir. 1990). The evidence here was offered to show that IBP had the motive or intent to mistreat employees following their work-related injuries and we find no error in its admission.

The hearsay issue is more troublesome. Evidence is hearsay if it contains an out-of-court statement offered to prove the truth of the matter asserted therein. Fed. R. Evid. 801(c). An out-of-court statement is not hearsay under the Federal Rules of Evidence if it is offered to show its effect on the hearer of the statement. United States v. Nieto, 60 F.3d 1464, 1467-68 (10th Cir. 1995). To determine whether other employees' complaints constitute hearsay, we must discern why the evidence is being offered.

At trial, the district court admitted the evidence despite stating the evidence was "probably hearsay." III App. at 583-85. In its post-trial order denying IBP's motion for a new trial, the district court ruled that the evidence of the employees' complaints that they were harassed and mistreated following injuries or claims for medical benefits was not hearsay because it was being offered to show that the IBP personnel directors heard complaints. I App. at 171. The judge's order stated that testimony by a witness that he heard or received complaints is "not hearsay, in that it is not a statement made by an out-of-court declarant. Fed. R. Evid. 801(c)." I App. at 171. We cannot agree. We feel it is clear that the "complaints" which were admitted over hearsay objections were offered not to prove the mere hearing or making of them; their purpose was to establish the proposition in the jury's mind that IBP in fact engaged in a pattern or practice of mistreating its employees after work-related injuries. As such, the out-of-court statements were inadmissible hearsay under Rule 801(c). See Winans v. Rockwell Int'l Corp., 705 F.2d 1449, 1456-57 (5th Cir. 1983); Cornelius v. Hondo, Inc., 843 F. Supp. 1243, 1246 (N.D. Ill. 1994).

The district court stated in its post-trial order that IBP did not cite any particular statement which IBP believes to be hearsay. The district court then ruled that a failure to specify testimony claimed to have been incorrectly admitted precludes the court from considering any claimed error in its admission. Arteiro v. Coca Cola Bottling, Midwest, Inc., 47 F.R.D. 186, 189 (D. Minn. 1969). However, the record is clear that at trial IBP made a hearsay objection to specific testimony of IBP personnel, Duong and Bolton, on the hearing of employee complaints. III App. at 583-585.

We are convinced the evidence was inadmissible hearsay. The remaining question is whether the error in admitting the hearsay evidence was such as to require a new trial. A new trial is appropriate only where the claimed error substantially, and adversely, affects the rights of a party. Hinds, 988 F.2d at 1049. IBP argues that it was substantially prejudiced by the testimony, and we agree. Our record shows considerable use of the hearsay evidence of complaints during the taking of evidence and during argument. III App. at 588, 667, 669, 670; IV App. at 1031.

## 2. Evidence of IBP's Workers' Compensation Goals and Accident-Free Incentive Programs.

Although we are remanding the case for a new trial due to erroneous admission of the hearsay evidence, we will discuss other claims of error because those questions may be presented again at the new trial. IBP argues that the district court erred in admitting evidence of IBP's "cost per injury" goals and accident-free incentive programs because the evidence was irrelevant. We review the admission of this evidence for abuse of discretion. Quitana,

70 F.3d at 1170. We agree with the district court that the evidence satisfied the test for relevance pursuant to Rule 401 of the Federal Rules of Evidence.[5] The "cost per injury" program and the accident-free incentive program are circumstantial evidence relevant to IBP's motivation to discourage the reporting of injuries and/or reduce the cost of injuries. See Hill v. IBP, Inc., 881 F. Supp. 521, 525 (D. Kan. 1995). We are not convinced that the district court abused its discretion in admitting the evidence.

## B

**Whether the district court erred in denying IBP's renewed motion for judgment as a matter of law.**

A Rule 50(c) renewed motion for judgment as a matter of law must be granted if, "viewing the evidence in the light most favorable to the nonmoving party, all the evidence and the inferences to be drawn from it are so clear that reasonable persons could not differ in their conclusions." Bacchus Indus. v. Arvin Indus., Inc., 939 F.2d 887, 893 (10th Cir. 1991); see also Wolfgang v. Mid-American Motorsports, Inc., 111 F.3d 1515, 1522 (10th Cir. 1997). A mere scintilla of evidence is not sufficient to submit a case to a juryBankers Trust Co. v. Lee Keeing & Assoc., Inc., 20 F.3d 1092, 1099 (10th Cir. 1994). We review the denial of a motion for judgment as a matter of law *de novo*. McKenzie v. Renberg's, Inc., 94 F.3d 1478 (10th Cir. 1996). To determine whether a renewed motion for judgment as a

---

[5]Rule 401 provides: "[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (quotations omitted).

matter of law is appropriate, we look to the underlying substantive law and the record evidence. Wolfgang, 111 F.3d at 1522.

### 1. **A Claim of Retaliatory Discharge Under Kansas Law**

Kansas has adopted the general rule that an employment-at-will can be terminated by either party at any time. Johnson v. Nat'l Beef Packing Co., 551 P.2d 779, 781 (Kan. 1976). Kansas recognizes an exception to the general rule where an employer discharges an employee in retaliation for the exercise of an employee's rights under the Kansas Workers' Compensation Act. Ortega v. IBP, Inc., 874 P.2d 1188 (Kan. 1994). In order to establish a claim of retaliatory discharge, the plaintiff has the initial burden to show: (1) he or she filed a claim for workers' compensation benefits, or sustained an injury for which he might assert a future claim for such benefits; (2) that the employer had knowledge of plaintiff's compensation claim, or the fact that he had sustained a work-related injury for which the plaintiff might file a future claim for benefits; (3) that the employer terminated the plaintiff's employment; and (4) that a causal connection existed between the protected activity or injury, and the termination. Chaparro v. IBP, Inc., 873 F. Supp. 1465, 1472 (D. Kan. 1995). Employees can recover by proving that the discharge was "based on," "because of," "motivated by" or "due to" the employer's intent to retaliate. Brown v. United Methodist Homes for the Aged, 815 P.2d 72 (Kan. 1991). Employees do not need to show that retaliation was the employer's sole motive or reason for the termination. Id. Once plaintiff has made his or her prima facie case, the burden shifts to the defendant employer to show an

- 11 -

articulate, non-retaliatory reason for the discharge. Rosas v. IBP, Inc., 869 F. Supp. 912, 916 (D. Kan. 1994). If the defendant meets its burden, the burden shifts back to the plaintiff but the plaintiff must show clear and convincing evidence that he or she was terminated in retaliation for exercising rights under the Workers' Compensation Act. Ortega, 874 P.2d at 1197-98.

Sanjuan has provided evidence sufficient to warrant a denial of IBP's motion for judgment as a matter of law. The evidence is uncontroverted that Sanjuan suffered an injury for which he could assert a future claim for worker compensation benefits. The evidence is also uncontroverted that IBP terminated Mr. Sanjuan. IBP disputes that it had notice of Mr. Sanjuan's injury, but as the district court noted, an IBP supervisor knew Mr. Sanjuan had been injured and had been assigned to "light duty."

The only element which we consider troubling is the causal connection element. IBP argues that it terminated Sanjuan based on: (1) the December 23 incident where the cattle fell down in the chute due to overshocking the cow by Sanjuan; (2) Sanjuan's employment record; and (3) its progressive discipline system. The district court cited two pieces of evidence as sufficient to justify a denial of IBP's motion for judgment as a matter of law. One piece of evidence was other employees' complaints of mistreatment following work-related injuries. As we have discussed above, this evidence is inadmissible hearsay. Thus it cannot be used to support a causal connection between Mr. Sanjuan's injury and his termination.

However, the district court also noted a causal connection existed by virtue of the timing of Mr. Sanjuan's termination. Mr. Sanjuan was not disciplined for poor job performance until after his injury. Close proximity in time may provide some probative evidence of retaliatory intent. See Robinson v. Wilson Concrete Co., 913 F. Supp. 1476 (D. Kan. 1996); Lyden v. Hill's Pet Nutrition, Inc., 907 F. Supp. 343, 347 (D. Kan. 1995). This fact, together with the inferences that must be drawn in favor of Mr. Sanjuan from IBP's "cost per injury" goals, IBP's accident-free incentive programs, Doug Bolton's testimony that he had seen cows accidently slip in the chute, and Sanjuan's own testimony concerning his mistreatment, made a submissible case for Sanjuan.

In sum, it was not error to deny the renewed motion of IBP for judgment as a matter of law under Rule 50(c). Furthermore, IBP had the opportunity to conduct thorough cross-examinations of the IBP personnel. We do not believe the evidence is so clear in favor of IBP that reasonable minds could not differ as to the outcome of this case.

## C

**Whether the District Erred in Denying IBP's Motion to Set Aside the Jury Award of $928 for Lost Fringe Benefits.**

IBP contends that the jury award of $928 for lost fringe benefits must be set aside as duplicative because Sanjuan's spouse, who was also an employee of IBP, continued to receive family medical insurance benefits. The trial judge below rejected IBP's argument on two grounds. First, the judge ruled that Sanjuan had presented evidence sufficient to show that the $928 compensated him for lost profit sharing benefits so that the jury verdict

- 13 -

was sustainable. I App. at 170. In reviewing a jury's award of damages, this Court "should sustain the award unless it is clearly erroneous or there is no evidence to support the award." Brown v. Presbyterian Healthcare Servs., 101 F.3d 1324, 1330 (10th Cir. 1996), cert. denied, 117 S. Ct. 1461 (1997). We are persuaded that it was not clear error for the jury to award $928 to Sanjuan to compensate him for lost fringe benefits, including profit sharing.

Second, the district court held that even if the $928 was compensation for Sanjuan's lost medical insurance benefits, "defendant provides the court with no authority in support of its proposition that an award of fringe benefits should be reduced to reflect a plaintiff's receipt of similar benefits from another source." I App. at 170. The spouse's receipt of family medical insurance benefits is analogous to a receipt of payment by a collateral source. Under the collateral source rule, benefits received by a plaintiff from a source "wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer." 22 Am. Jur. 2d § 566 at 639. Kansas adheres to the collateral source doctrine. Anderson v. National Carriers, Inc., 695 P.2d 1293, 1298-99 (Kan. 1985) (holding that receipt of workers' compensation benefits does not reduce recovery against negligent tortfeasor). We are persuaded that payment of family medical insurance benefits to the spouse of an injured worker by the injured worker's employer when the spouse is also an employee of the injured worker's employer is a collateral source.

**D**

**Whether the District Court erred by instructing the jury that workers'
compensation benefits award damages for physical pain, lost wages, and future**

**lost income.**

Sanjuan argues that the district court erred in instructing the jury that the Workers Compensation Act awards damages for physical pain, lost wages, and future lost income. According to Sanjuan, the Workers Compensation Act does not compensate an employee for lost wages, future lost income, emotional distress or pain and suffering. Sanjuan contends that had the jury been properly instructed, it would not have awarded Sanjuan damages substantially less than his historic wage loss of $78,744 and the present value of future wage loss in the amount of $436,515. Thus, Sanjuan requests that we reverse this matter and remand for a new trial on the issue of damages alone. Whether a jury was properly instructed is a question of law which we review *de novo*. Wolfgang v. Mid-America Motorsports, Inc., 111 F.3d 1515, 1525-26 (10th Cir. 1997).

The jury instruction in dispute reads:

> The Workers Compensation Act provides the sole and exclusive remedy for any and all injuries that an employer may sustain while working for his employer, as long as those injuries occur while the employee is acting within the scope of his duties. The Workers' Compensation Act compensates injured workers for physical pain and disability caused by work-related injuries, wages lost as a result of their injuries, and future lost income in the event that their injuries prevent them from finding suitable employment. The plaintiff may not recover in this action for any damages that were caused by an accident that he sustained while working for defendant.

I App. at 132.

We agree with the district court that the jury instruction merely informs the jury that the Workers Compensation Act compensates workers for wages lost as a result of their work

- 15 -

injuries, and that such damages are properly awarded under the Act rather than in an action for retaliatory discharge. Damages for injuries arising in the scope of employment are recoverable only under the Workers' Compensation Act. A plaintiff may not recover wages in a retaliatory discharge action for a period of time during which he receives temporary total disability compensation. Hill v. IBP, Inc., 881 F. Supp. 521, 525 (D. Kan. 1995). The instruction correctly states the law.

Even if Instruction No. 12 was somewhat unclear, any lack of clarity in the instruction failed to prejudice Sanjuan sufficiently to be reversible. The district court instructed the jury on the availability of the damages caused by the retaliatory discharge, including damages for lost wages and fringe benefits, damages for embarrassment, humiliation and emotional distress, punitive damages, and damages of Sanjuan in attempting to mitigate his damages. I App. at 135-143. In our review of whether a jury was misled by an instruction, we read all instructions in their entirety. United States v. Grey, 56 F.3d 1219, 1222 (10th Cir. 1995) (to determine whether the jury was properly instructed, we examine whether the jury instructions, as a whole, "adequately stated the governing law and provided the jury with an accurate understanding of the issues and standards available."). Taken as a whole, the jury was properly instructed to award damages for losses caused by retaliatory discharge set out above, rather than for losses caused by the work injury which are compensable under the workers' compensation law.

Moreover, the jury, which has the first-hand opportunity to hear testimony and observe the demeanor of witnesses, has discretion to fix damages. Bennett v. Longacre, 774 F.2d 1024, 1028 (10th Cir. 1985). We will not disturb a jury's award of damages unless the award is so unreasonable "as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial." Id. We find nothing in the record that causes us a shock to our judicial conscience. Accordingly, we affirm the ruling on the instructions which the cross-appeal of Sanjuan challenges.

**E**

**Whether the District Court erred by instructing the jury to decide whether or not to award punitive damages.**

Sanjuan argues it was plain error for the district court to submit the following verdict form to the jury: "[d]o you find that Sanjuan is entitled to an award of punitive damages?" According to Sanjuan, the proper question must be whether IBP's conduct in firing Sanjuan was willful, wanton and malicious. Generally we review whether a jury was properly instructed *de novo*. However, because Sanjuan failed to object at trial to the verdict form, we review it for plain error. United States v. Smith, 13 F.3d 1421, 1424 (10th Cir.), cert. denied, 513 U.S. 878 (1994).

There is no basis for Sanjuan's argument. The instructions submitted to the jury contained the language he argues should have been in the verdict form. The fact that the question on the verdict form does not contain the language the instructions contain is immaterial. The jury was clearly informed that an award of punitive damages was not

- 17 -

automatic if it found IBP to have retaliated against Sanjuan; instead, if the jury found retaliation, if would was required to determine whether IBP's conduct was willful, wanton or malicious. Again, we uphold the ruling challenged by Sanjuan's cross-appeal.

**F**

**Whether the District Court erred in not considering an additur**.

Lastly, Sanjuan cross-appeals the denial of his motion for additur. He claims that it is unconstitutional to prohibit a district court from ordering an additur. We reject Mr. Sanjuan's argument because the Supreme Court's decision in Dimick v. Schiedt, 293 U.S. 474 (1935), has foreclosed the issue. See Lyon Dev. v. Business Men's Assurance Co. of Am., 76 F.3d 1118, 1125 (10th Cir. 1996). There was no error in the denial of the motion for an additur as asserted by the cross-appeal.

**CONCLUSION**

The judgment of the district court is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion. The rulings challenged by the cross-appeal are **AFFIRMED**. Each party shall bear its own costs.