**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 14 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SHAUNA E. SMITH,

      Plaintiff - Appellant,

v.

CITY OF OKLAHOMA CITY,

      Defendant - Appellee,

and

L. D. ALLEN; DON BROWNING;
PAUL BURLEY; THOMAS HART;
MIKE HEATH; DALE MARSHALL;
BILLY PRATT; NATHAN PYLE;
DARREN RAINES; DAVID SHUPE;
MARTY STUPKA; MIKE
WILLIAMS,

      Defendants.

No. 01-6307
(Western District of Oklahoma)
(D.C. No. 99-CV-1842-R)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **McKAY**, and **MURPHY**, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. INTRODUCTION

Shauna E. Smith ("Smith") filed this suit against her former employer, the City of Oklahoma City (the "City"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e – 2000e-17, alleging claims for sexual harassment hostile work environment, constructive discharge, and retaliation. After a trial on the merits, a jury returned a verdict in favor of the City.

Smith moved for a new trial under Rule 59 of the Federal Rules of Civil Procedure, arguing that the district court erred in instructing the jury that Sergeant Don Browning ("Browning") was not her supervisor and in admitting the City's training videotape into evidence. The district court denied the motion and Smith appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms in part** and **reverses in part** the district court's denial of Smith's motion for a new trial.

## II. BACKGROUND

Smith was employed as a police officer by the City from September 1989 until November 1999.

In 1993, Smith was assigned to the IMPACT unit of the police department. At trial, Smith testified that while in IMPACT, she attended an ethics training class during which a training videotape was shown. Smith testified that the videotape included scenes from a surveillance tape depicting an officer and a

confidential informant engaging in sexual acts. Smith testified that the videotape produced by the City during discovery was edited and did not include the sexual acts that were shown during the training class. Johnny Loudermilk ("Loudermilk"), a former police officer, testified that he attended the same training class and viewed the same videotape depicting sexual acts between the officer and the confidential informant. The district court admitted the videotape into evidence.

In response to Smith's and Loudermilk's testimony, the City called Captain Byron Boshell ("Boshell") who testified that he edited the videotape for the training class. Boshell, however, further testified that the original videotape did not include the sexual acts testified to by Smith and Loudermilk. The City moved to have the original videotape as edited by Boshell admitted into evidence. Smith objected, arguing that the City failed to produce the original videotape in discovery and did not list it as an exhibit in the pretrial order. The district court overruled Smith's objection and admitted the original videotape into evidence.

In December 1994, Smith was assigned to the position of K-9 officer. She began K-9 training in January 1995. From January 1995 until April 18, 1995, Smith trained with Browning. At trial, Smith presented evidence that Browning was responsible for assigning her a dog, provided her with daily one-on-one training on dog handling, maintained the kennels, and was responsible for

determining whether Smith and her dog were "qualified" after the completion of training and various tests.

Smith also presented evidence that Browning assigned her what was referred to as the "psycho dog" or the "crazy dog" and instructed her to clean the kennels with a solution which caused her injury. Smith presented evidence that Browning was overheard informing two lieutenants, "Not to worry about it . . . [t]he cunt can't handle that crazy dog. He'll eat her up and she'll be out of here and she'll be off K-9." Smith testified that Browning told her, in reference to women in Vietnam, "we . . . f*** 'em and stick grenades [in their genitalia]." Smith also testified that Browning told her the United States Police Canine Association does not like women dog handlers because they have a "certain odor," and later asked if she had been menstruating when the dog bit her.

The City presented evidence that Browning submitted his training schedules to another supervisor for approval, was not a participant in Smith's performance evaluations, and was not authorized to discipline Smith or to make decisions concerning her leave. Further, the City presented evidence that the City's collective bargaining agreement ("CBA") does not list the rank of sergeant as a supervisory rank. At the close of Smith's evidence, the City moved for judgment as a matter of law, arguing, in part, that Smith failed to prove that Browning was

-4-

her supervisor. The district court denied the City's motion, but found that Browning was not Smith's supervisor.

At the close of the evidence, the district court instructed the jury as follows:

> In order to establish her claim for hostile work environment sexual harassment under Title VII, the Plaintiff must prove by a preponderance of the evidence each of the following essential elements:
>
> . . . .
>
> Sixth:     That a specific basis exists for imputing the conduct that created the hostile work environment to the Defendant City.
>
> . . . .
>
> With regard to the Sixth element identified above, the basis for imposing liability upon an employer depends upon whether the alleged harassment creating the hostile work environment is committed by a supervisor or by a co-worker. When the source of the alleged harassment is a co-worker, the Plaintiff must demonstrate either that the employer failed to provide a reasonable avenue for complaint, or that management-level employees knew or should have known about the harassment, yet failed to take appropriate remedial action. "Management level employees" are defined as those supervisors who possessed substantial authority over the terms and conditions of the harasser's or the harasee's employment, such as the ability to hire, promote, discharge or discipline. The Court has determined that Sgt. Don Browning was not a management level employee.
> When the sexually hostile work environment is created by the actions of a supervisor, the employer is liable unless the employer meets the elements of the affirmative defense described in the following Instruction.

Smith objected to the instruction that Browning was not her supervisor.

The jury returned a verdict for the City. Smith moved for a new trial, arguing that the district court erred in instructing the jury that Browning was not

her supervisor and in admitting the City's training videotape into evidence. The district court denied Smith's motion.

## III. DISCUSSION

This court reviews the district court's decision to deny a motion for a new trial for abuse of discretion. *Osteguin v. S. Pac. Transp. Co.*, 144 F.3d 1293, 1295 (10th Cir. 1998). The denial of a motion for a new trial will be reversed "only if the trial court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Weese v. Schukman*, 98 F.3d 542, 549 (10th Cir. 1996). This court, however, reviews *de novo* the district court's grant of the City's motion for judgment as a matter of law on the issue of whether Browning was Smith's supervisor. *Colorado Cross Disability Coalition v. Hermanson Family Ltd. P'ship I*, 264 F.3d 999, 1001 (10th Cir. 2001).

### A.    Instruction regarding Browning's supervisory status

While this court reviews the "district court's decision to give a particular instruction for abuse of discretion," the instructions are reviewed "in their entirety de novo to determine whether the jury was misled in any way" and "whether the jury was adequately instructed on the applicable law." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1225 (10th Cir. 2000) (quotation omitted). Further, "[r]eversal is appropriate only if there was prejudicial error."

*Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1212 (10th Cir. 2001).

Smith argues, by concluding as a matter of law that Browning was not Smith's supervisor and by instructing the jury on this issue, the district court committed reversible error. "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Employers, however, are liable for a co-worker's harassment of a fellow employee only when the employer "knew, or should have known, about the hostile work environment and failed to respond in an appropriate manner." *See Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1270 (10th Cir. 1998); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 799 (1998).

Whether Browning was Smith's supervisor is dependent on whether Browning "had sufficient control over [Smith] to be considered her supervisor." *Wright-Simmons*, 155 F.3d at 1271. To be considered a supervisor, one must have "the authority to affect the terms and conditions of the victim's employment." *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1034 (7th Cir. 1998).

Smith presented evidence that Browning was responsible for assigning her a dog in the K-9 unit, providing her with daily one-on-one training, and ultimately deciding whether she and her dog were "qualified." The City argues that Browning was not a supervisor because the CBA does not list the position of sergeant as a supervisory position and because Browning did not participate in decisions regarding Smith's leave, annual performance evaluations, and discipline. While a jury could consider the City's evidence in determining whether Browning had sufficient control over Smith to affect the terms and conditions of her employment, the record does not support a determination that Browning was not Smith's supervisor as a matter of law. Because Browning directed Smith's daily tasks from January 1995 through April 18, 1995 and was responsible for determining whether she and her dog were "qualified," a reasonable jury could conclude that Browning was Smith's supervisor. *See Faragher*, 524 U.S. at 781, 808 (noting that the supervisor was responsible for making daily lifeguard assignments, supervising fitness training, and controlling all aspects of day-to-day activities). Accordingly, the district court erred in not submitting to the jury the question of whether Browning was Smith's supervisor.[2]

---

[2] The City also argues that Browning was not Smith's supervisor during the relevant time period of her Title VII claims, i.e. November 1, 1997 through February 3, 1999. Because Smith alleged that Browning's conduct was part of the alleged hostile work environment, however, his conduct is considered as part of her timely hostile work environment claim. *Nat'l R.R. Passenger Corp. v.*

Even though the district court erred in instructing the jury that Browning was not Smith's supervisor, this court will not reverse the judgment and remand for a new trial unless the error was prejudicial. *See Doering*, 259 F.3d at 1212. If the jury found Browning to be Smith's supervisor, the jury could have found the City liable on Smith's hostile work environment claim premised on a theory of vicarious liability. *See Burlington*, 524 U.S. at 765; *Faragher*, 524 U.S. at 799. Because the jury was instructed that Browning was not Smith's supervisor, however, the jury could only have found the City liable for Browning's harassment if it also found that the City knew, or should have known, of Browning's harassment. *See Wright-Simmons*, 155 F.3d at 1270. Therefore,

---

*Morgan*, 122 S. Ct. 2061, 2075 (2002) (holding that because "the incidents comprising a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of [the] single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment."); *see also Boyer v. Cordant Techs., Inc.*, 316 F.3d 1137, 1140 (10th Cir. 2003) (holding that "*Morgan* implicitly overruled [prior] Tenth Circuit cases to the extent these cases held that recovery on a Title VII hostile work environment claim is not available for acts taken outside the statutory time period where the plaintiff knew or should have known the conduct was discriminatory when the acts occurred"). Moreover, the district court instructed the jury that "[i]ncidents of alleged harassment occurring prior to November 1, 1997 may be considered as part of the Plaintiff's hostile work environment claim if they are part of a continuing pattern of discriminatory harassment." Accordingly, the jury could find the City vicariously liable for Browning's conduct even though it occurred prior to November 1, 1997. *See Morgan*, 122 S. Ct. at 2075; *See also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 799 (1998).

because the district court's instruction limited the theories of liability for Smith's hostile work environment claim, the instruction prejudiced Smith.[3]   Accordingly, the district court erred in denying Smith's motion for a new trial on Smith's hostile work environment claim.

With respect to Smith's retaliation claim, the determination of whether Browning was a supervisor does not affect the issue of liability.  Smith alleged that the City retaliated against her after she filed charges with the Equal Employment Opportunity Commission (EEOC) on August 28, 1998, and on February 3, 1999 by transferring her from the K-9 unit and constructively discharging her.  Browning, however, ceased training Smith on April 18, 1995.  Accordingly, although the district court erred in instructing the jury that

---

[3]  The district court instructed the jury on Smith's constructive discharge claim as follows:
> In connection with her claim for hostile work environment sexual harassment, the Plaintiff claims that she was constructively discharged.  In order to recover damages for constructive discharge, the Plaintiff must establish her claim for hostile work environment sexual harassment, as explained in the preceding instructions, and, in addition; must prove that the Plaintiff's working conditions were so intolerable that any reasonable person, under the same circumstances, would feel forced to resign.

Under the jury instructions, Smith's constructive discharge claim was conditioned on her ability to prove a hostile work environment claim.  Accordingly, the district court's erroneous instruction also prejudiced Smith with respect to her constructive discharge claim.

-10-

Browning was not Smith's supervisor, the instruction was not prejudicial as to Smith's retaliation claim.

**B.      The City's training videotape**

When the issue of whether to grant a new trial "hinges on the admissibility of evidence," this court reviews the "admission of the evidence for abuse of discretion." *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1296 (10th Cir. 1998). If the evidence was erroneously admitted, this court "will set aside a jury verdict only if the error prejudicially affects a substantial right of a party." *Id*. Further, "[e]vidence admitted in error can only be prejudicial if it can be reasonably concluded that . . . without such evidence, there would have been a contrary result." *Id*. (internal quotation omitted).

Smith argues that the district court erred in admitting the City's training videotape into evidence because the City failed to produce the videotape in discovery and failed to list the videotape as an exhibit in the pretrial order. At trial, Smith and Loudermilk testified that the City showed a videotape in an ethics training class which depicted an officer and a confidential informant engaging in sexual acts. In response to this testimony, the City introduced the original training videotape and the testimony of Boshell to show the absence of any depiction of sexual acts.

The district court admitted the City's videotape and Boshell's testimony as rebuttal evidence. While the district court noted that the City's videotape was not listed as an exhibit in the pretrial order, the district court reasoned that Smith was not unfairly prejudiced by the introduction of either the videotape or Boshell's testimony. Specifically, the district court noted that the City had previously filed Boshell's affidavit concerning the content of the City's videotape in support of its motion for summary judgment.

Because Boshell's testimony and the City's videotape served only to rebut Smith's and Loudermilk's testimony, Smith was not unfairly prejudiced by the admission of the City's videotape or Boshell's testimony. *See Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1108 (10th Cir. 1998) (holding that the plaintiff was not unfairly prejudiced by the admission of the testimony of two rebuttal witnesses); *Burks v. Oklahoma Publ'g Co.*, 81 F.3d 975, 980 (10th Cir. 1996) (stating that a rebuttal witness need not be listed as a witness in the pretrial order to be permitted to testify); *Canady v. J.B. Hunt Transp., Inc.*, 970 F.2d 710, 716 (10th Cir. 1992) (holding that the introduction of testimony that was purely rebuttal was not an abuse of discretion). Accordingly, the district court did not abuse its discretion in admitting the City's videotape and Boshell's testimony.

Smith also argues that the City's videotape should have been excluded under Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§

2510 – 2522, ("Title III"). Title III prohibits the use of "any wire or oral communication [that] has been intercepted" as "evidence in any trial, hearing, or other proceeding in or before any court . . . if the disclosure of that information would be in violation of [Title III]." *Id*. § 2515. Only an "aggrieved person," however, has standing to challenge the legality of intercepted communications under Title III. *In re Berry*, 521 F.2d 179, 185 (10th Cir. 1975) (holding that the "[w]itness has not shown that he was a party to any intercepted wire or oral communication or a person against whom the interception was directed. Hence, he was not an aggrieved person and has no standing to raise the claim of illegal surveillance."); 18 U.S.C. §§ 2510(11), 2515. An "aggrieved person" under Title III is "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11). Smith was not a party to the City's videotape. Moreover, she was not a person "against whom the interception was directed." *See id*. Accordingly, Smith is not an "aggrieved person" and lacks standing to challenge the legality of the City's videotape under Title III. *See Berry*, 521 F.2d at 185.

## IV. CONCLUSION

For the reasons stated above, this court **affirms in part** and **reverses in part** the district court's denial of Smith's motion for new trial. The case is

**remanded** to the district court for a new trial on Smith's hostile work environment and constructive discharge claims in accordance with this opinion.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge