**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 18 2005**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

WILLIAM SENTERS, LINDA
SENTERS, husband and wife,

      Plaintiffs-Appellees,

v.

BLACK & DECKER (U.S.), INC.,

      Defendant-Appellant.

No. 03-6256
(D.C. No. 02-CV-1301-A)
(W.D. Okla.)

ORDER AND JUDGMENT *

Before **ANDERSON** and **BALDOCK** , Circuit Judges, and **MARTEN** ,** District
Judge.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

\*\* The Honorable J. Thomas Marten, District Judge, United States District
Court for the District of Kansas, sitting by designation.

In this diversity product liability case, defendant-appellant Black & Decker (U.S.), Inc. (B&D) appeals from a jury verdict and related judgment entered in favor of plaintiff-appellee William Senters. B&D claims that it is entitled to a new trial as a result of evidentiary errors committed by the district court. Our jurisdiction arises under 28 U.S.C. § 1291. We agree with B&D that a new trial is required in this matter, and we therefore reverse and remand for further proceedings. [1]

## I.

On January 4, 2000, Mr. Senters was cutting baseboard trim with a Black & Decker Model 1710 Miter Saw (the Saw) that he had purchased from B&D in 1997. While operating the Saw, Mr. Senters' right hand came into contact with the blade of the Saw, and he sustained serious and permanent injuries to three fingers on his right hand. Mr. Senters thereafter filed a product liability action against B&D in state court. During the state-court proceedings, Mr. Senters submitted discovery responses alleging that the Saw was a defective product because: "(1) the blade guard failed to rotate down to cover the moving blade of

---

[1] Although the judgment at issue in this appeal was entered in favor of both William Senters and the estate of Linda Senters (Mr. Senters' deceased wife), the jury did not award any damages to the estate of Linda Senters. Consequently, we do not need to separately address Linda Senters' loss of consortium claim except to note that the claim will need to be retried along with Mr. Senters' product liability claim.

the saw when Mr. Senters released the handle and trigger . . .; and (2) the saw did not have a blade braking mechanism." Aplt. App., Vol. III at 910.

The state-court action was subsequently dismissed, and the case was refiled in the United States District Court for the Western District of Oklahoma in September 2002. In April 2003, Mr. Senters' liability expert, William Coleman, a consulting metallurgical engineer, submitted his expert witness report pursuant to Fed. R. Civ. P. 26(a)(2). In his report, Mr. Coleman stated that he had visually examined and tested the Saw, and he concluded that the Saw was a defective product and that the Saw's defects caused Mr. Senters' injuries because: (1) as a result of conditions caused by an incorrectly installed flanged sleeve, the Saw's blade guard mechanism malfunctioned and failed to properly rotate downward to cover the Saw's blade when Mr. Senters raised the Saw to its upright position, *see* Aplt. App., Vol. I at 67-68; (2) the owner's manual for the Saw "fail[ed] to warn the user of the potential dangers of incorrect installation of the blade guard flanged sleeve and its detrimental effect on the proper and safe operation of the blade guard," *id.* at 68; and (3) the Saw was not equipped with an electric blade brake, *id.* Mr. Coleman also concluded, however, that the Saw's "spring-loaded, suspension arm functioned as designed and the power button operated normally." *Id.* at 66. Consequently, according to Mr. Coleman, when "Mr. Senters released the power button and subsequently the hand grip, . . . the spring-loaded

-3-

suspension arm . . . return[ed] the blade housing and the rotating saw to the upright position." *Id.* at 65.

Mr. Coleman's observations regarding the spring-loaded suspension arm were consistent with the observations of B&D's representatives. First, in May 2000, B&D's product representative, Daniel Montague, examined the Saw. Like Mr. Coleman, Mr. Montague observed that the saw head moved smoothly from the cutting position to the upright position. *Id.*, Vol. II at 589-90. Second, in February 2003, B&D's liability expert, Jack Hyde, a product safety engineer, examined the Saw. Like Mr. Coleman and Mr. Montague, Mr. Hyde observed that the saw head moved smoothly from the cutting position to the upright position. *Id.*, Vol. III at 802-05, 808-09.

The district court's discovery deadline expired in June 2003, *id.*, Vol. I at 25, and the parties filed a joint pretrial report on August 1, 2003, *id.* at 289-303. In the joint pretrial report, Mr. Senters alleged that the Saw was defective for the following reasons:

> [T]he miter saw had a blade guard which failed to properly rotate down and/or sufficiently cover the moving blade of the saw upon release of the saw by William Senters . . ., and . . . the saw lacked [a] blade braking mechanism.

*Id.* at 290. Importantly, once again, Mr. Senters did not allege that the Saw's spring-loaded suspension arm was defective or that the saw head had somehow failed to move properly from the cutting position to the full upright position.

-4-

Instead, his allegations were focused exclusively on the blade guard's alleged malfunction in failing "to properly rotate down" and on the lack of a blade brake. *Id.*

The trial of this case was scheduled to commence on Monday, August 18, 2003, with jury selection scheduled to commence on Monday, August 11. At 3:51 p.m. on Friday, August 8, Mr. Senters' counsel faxed a letter to B&D's counsel stating that Mr. Coleman had conducted another examination of the Saw on the morning of August 8, and that he had "observed a characteristic of the evidence saw which he had not previously discovered." *Id.* at 308. Counsel further stated that the characteristic observed by Mr. Coleman involved "newly discovered properties of the evidence saw." *Id.* Specifically, Mr. Coleman claimed that the Saw's spring-loaded suspension arm was failing to move properly from the cutting position to the full upright position, as it was sticking at an intermediate position between the cutting position and the fully raised position. *Id.* at 308-09. In addition, according to Mr. Coleman, "[w]hen the upward movement of the saw head . . . stop[ped] . . . there [was] a significant portion of the bottom of the saw blade exposed." *Id.* at 309. As a result of these observations, counsel for Mr. Senters stated that Mr. Coleman was prepared to "render further opinions regarding [his] observations including the fact that the occurrence of the saw head stopping before returning to its full upright position would have allowed Mr.

-5-

Senters' hand to contact the unguarded lower portion of the spinning blade thereby causing his injuries." *Id.*

In light of the observations made by Mr. Coleman on August 8, counsel for Mr. Senters also informed counsel for B&D that "if you desire, Mr. Coleman can be available for supplemental deposition next week." *Id.* Counsel for B&D did not accept this offer, however, as counsel instead filed an emergency motion in limine to exclude Mr. Coleman's opinions regarding the saw head sticking problem. *Id.* at 304-06. On August 12, 2003, the district court granted the motion, concluding that the observations made by Mr. Coleman on August 8 were "not merely a clarification of prior evidence and testimony or a supplement to Mr. Coleman's prior opinion. Plaintiffs instead propose to offer a *new opinion* by Mr. Coleman concerning an *entirely different alleged defect* in defendant's product." *Id.*, Vol. II at 331 (emphasis added). Further, the court rejected Mr. Senters' claim that "any prejudice to defendant [could] be alleviated by simply convening another deposition of Mr. Coleman before trial." *Id.* at 330. As the court explained, "[f]airness in trial preparation requires that there be an end point in developing new evidence." *Id.*

The trial of this case commenced on August 18, 2003, and Mr. Senters' counsel called Mr. Senters and Mr. Coleman as his first two witnesses. During his examinations of Mr. Senters and Mr. Coleman, counsel did not specifically

refer to the saw head sticking problem, and Mr. Coleman testified only as to his original defect theories ( *i.e.*, malfunction of the blade guard, absence of a blade brake, and failure to warn). *Id.* at 483-85, 503, 505-07. However, Mr. Senters' counsel next called B&D's product representative, Daniel Montague, as an adverse witness. During his examination of Mr. Montague, counsel put on a demonstration with the Saw, and he was able to duplicate the saw head sticking problem that was allegedly observed by Mr. Coleman. *Id.* at 585-87. Counsel for Mr. Senters and Mr. Montague also had the following colloquy regarding the sticking problem:

> Q. (Counsel). Okay. If the [misinstalled] screw head did bind it, . . . are you saying that that resistance caused by the screw head binding that guard link would not affect whether [the saw head] properly lifted, . . . ?
>
> A. (Mr. Montague). I think you can bind the–you can turn the screw in tight enough so that you can make it stop.
>
> Q. Did you see me turn the screw in tighter right now?
>
> A. No.
>
> Q. And you would agree that it's bound right now, isn't it?
>
> A. I don't believe it's bound from the–the area of the link.
>
> Q. Is the saw head all the way up?
>
> A. No.
>
> Q. If Mr. Senters ha[d] turned to the left and laid a piece of wood down and reache[d] back to get the piece of wood on the right

side . . ., is he going to touch an exposed blade if the head is in that position?

A.  If the head is in that position, he very well may.

*  *  *  *

Q.  Mr. Montague, before the break we were talking about the occurrence of the saw which injured Mr. Senters sticking here in the courtroom today.  Tell me why the saw is sticking.

A.  I don't know why it's sticking.  I could tell you what could make it stick, but I don't know why this particular one is.

*Id.* at 586-87, 589.

During a recess that was taken during Mr. Montague's testimony, counsel for B&D moved for a mistrial, arguing that "[t]his [sticking] condition that [counsel for Mr. Senters] has created . . . is exactly what the subject of our motion in limine was."   *Id.* at 587.  The district court denied the motion for a mistrial, stating that "the motion in limine was with respect to the testimony of Mr. Coleman, not the capacities or condition of the machine itself."   *Id.* at 587-88.  As the court further explained, "it is one thing to address the testimony of Mr. Coleman and his introduction as an expert witness of a brand-new subject of inquiry here, it's something else when the subject of a brand-new inquiry can be duplicated on the saw itself by, with respect to engineering, a layman."   *Id.* at 588-89.

Following the denial of the motion for a mistrial, counsel for B&D cross-examined Mr. Montague regarding the saw head sticking problem and the fact that neither he nor Mr. Coleman had observed it when they initially inspected the Saw. *Id.* at 606. Counsel for B&D also recalled Mr. Montague as a witness during B&D's defense case, and the sticking problem was further explored at that time. *Id.*, Vol. III at 659, 676. In addition, because of an unexplained further deterioration in the ability of the saw head to move up and down that somehow occurred during the course of the trial, the district court concluded that the jury needed to be informed of that fact. *Id.* at 686-92. The court itself therefore had the following colloquy with Mr. Montague:

> The Court: Mr. Montague, will you go to the . . . saw and raise and lower its arm and tell us whether the action of the arm, and especially any resistance that you feel, is the same or different from what you previously experienced with that saw. . . .
>
> The Witness: It feels a bit tighter.
>
> The Court: With what result?
>
> The Witness: Well, I don't know.
>
> The Court: That it doesn't move as freely?
>
> The Witness: Yes, it's not quite as freely.
>
> The Court: Did your observation change during the two or three times that you raised and lowered it?
>
> The Witness: No, I think that was–it was the same in those times like within the last two minutes.

The Court: Yes. But different from what you previously tested.

The Witness: Yes.

The Court: Well, this was brought to my attention during the lunch hour, there's absolutely no . . . allegation whatsoever, that anyone participating in this trial manipulated it in such a way as to cause the difference, . . . and I intend not to have subsequent demonstrations made by witnesses with the saw because of the difference, but I did think it only fair to point out to [the jury] that [they've] seen that elevated and lowered so many times during the trial, and that is the explanation why [they] won't be seeing that again.

*Id.* at 692-93.

After Mr. Montague finished testifying, counsel for B&D called Mr. Coleman as an adverse witness, and it was established during counsel's questioning of Mr. Coleman that he had not observed the saw head sticking problem between the time when he first took possession of the Saw in the Fall of 2002 and the time of his deposition in June 2003. *Id.* at 739-44, 746-47. After counsel for B&D concluded his direct examination of Mr. Coleman, the district court made a ruling to the effect that B&D had opened the door regarding Mr. Coleman's inspection of the Saw on August 8, 2003 and the observations he made at that time. *Id.* at 747-48. As a result of this ruling, counsel for Mr. Senters then proceeded to cross-examine Mr. Coleman regarding his inspection on August 8, although Mr. Coleman was not specifically asked to state when the inspection had occurred. *Id.* at 750-52. Instead, through questions posed by the district court, it

was only established that Mr. Coleman had made the observations after the discovery cut-off in the case.    *Id.* 760-62.

Counsel for B&D then conducted a redirect examination of Mr. Coleman, and it was established during the redirect examination that Mr. Coleman did not make his observations regarding the saw head sticking problem until August 8–the Friday before jury selection was to begin.    *Id.* at 764-66.  As its last witness, B&D called its liability expert, Jack Hyde.  Mr. Hyde testified that he had not observed any sticking problem when he inspected the Saw in February 2003.  *Id.* at 802-06, 808-10.

After hearing all of the evidence and the closing arguments of counsel, the jury completed a general verdict form, and it found in favor of Mr. Senters on his product liability claim and awarded him damages in the amount of $250,000.00.  Subsequently, the district court also awarded Mr. Senters prejudgment interest in the amount of $14,108.15.  The court therefore entered an amended judgment in favor of Mr. Senters in the amount of $264,108.15.

## II.

B&D claims that the district court committed reversible error when it: (1) permitted Mr. Senters' counsel to demonstrate the saw head sticking problem before the jury during his direct examination of Mr. Montague; and (2) permitted Mr. Senters' counsel to question Mr. Montague regarding the sticking problem.

B&D claims that the district court thus permitted "Plaintiff's lawyer [to] do what the Plaintiff's expert witness could not do–force Defendant to confront an entirely new 'defect' claim for the first time during trial." Aplt. Opening Br. at 9.

"The admission or exclusion of evidence lies within the sound discretion of the district court and will not be reversed absent an abuse of discretion." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1227 (10th Cir. 2000). Likewise, we review the district court's denial of B&D's motion for a mistrial for an abuse of discretion. *See Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1106 (10th Cir. 1998). However, even "[i]f error is found in the admission of evidence, we will set aside a jury verdict only if the error prejudicially affect[ed] a substantial right of a party." *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1296 (10th Cir. 1998). "Evidence admitted in error can only be prejudicial if it can be reasonably concluded that with or without such evidence, there would have been a contrary result." *Id.* (quotation omitted).

For purposes of this appeal, the evidentiary issues ultimately collapse into a claim that B&D was prejudiced at trial through unfair surprise. "[W]hen a party requests a new trial on the basis of surprise testimony it must be able to show surprise, prejudice, and an attempt to cure the prejudice such as a motion for a continuance." *Hynes v. Energy W., Inc.*, 211 F.3d 1193, 1203 (10th Cir. 2000) (quotation omitted). Because we conclude that all three of these elements are

-12-

satisfied here, we also conclude that the district court abused its discretion when it admitted evidence regarding the saw head sticking problem and failed to declare a mistrial.

With respect to the requirement of surprise, the district court was correct when it noted that its order granting B&D's motion in limine was, by its express terms, limited to the testimony of Mr. Coleman. *See* Aplt. App., Vol. II at 331, 588-89. Nonetheless, given the context of the district court's order and the court's express recognition that Mr. Senters was seeking to introduce "an entirely different alleged defect," *id.* at 331, it was perfectly reasonable for B&D to believe that the district court's order would have the practical effect of precluding Mr. Senters from introducing any evidence at trial concerning the saw head sticking problem, regardless of the source of the evidence. In other words, it was reasonable for B&D to believe that the district court would not permit Mr. Senters to circumvent its ruling by allowing lay testimony and arguments of counsel regarding the very same theory of liability. Thus, the surprise requirement is satisfied here.

With respect to the cure requirement, we hold that counsel for B&D satisfied the requirement by moving for a mistrial during the testimony of Mr. Montague in Mr. Senters' case-in-chief. Under the circumstances, we do not believe that counsel had any other choice but to ask for a mistrial, and we see no

-13-

reason to penalize B&D simply because its counsel did not request a remedy that would have permitted the trial to go forward.

We also have no trouble concluding that the prejudice requirement is satisfied here. Most importantly, B&D had no opportunity, and no reason, to conduct pretrial discovery or an independent investigation regarding the saw head sticking problem. In particular, because the district court granted its motion in limine, B&D did not redepose Mr. Coleman, and it also did not have an opportunity to designate any rebuttal witnesses. In addition, because of the prominent role that the sticking problem ultimately played in the trial of this case, we also believe that "without such evidence, there would have been a contrary result." *Sanjuan*, 160 F.3d at 1296; *see also Sanford v. Crittenden Mem'l Hosp.*, 141 F.3d 882, 886 (8th Cir. 1998) ("Surprise during trial, by major variance in theory of recovery or defense, undisclosed until after the trial is underway, is a long-established ground for granting a new trial motion.").

Finally, we reject Mr. Senters' claim that B&D's own conduct during trial somehow opened the door to allow the admission of evidence concerning the sticking problem. As set forth above, while B&D opened the door during its defense case for Mr. Senters' counsel to cross-examine Mr. Coleman regarding his discovery of the sticking problem, B&D did not open that door until after the

district court had permitted Mr. Senters' counsel to inject the sticking problem into the case, and it was a purely defensive move.

## CONCLUSION

We agree with B&D that it was unfairly surprised at trial, and that a new trial is therefore an unavoidable necessity due to the district court's abuse of its discretion. Accordingly, we REVERSE the judgment of the district court, and we REMAND this matter for a new trial. In remanding this matter for a new trial, we express no opinion as to whether the district court should exclude all evidence concerning the saw head sticking problem or, alternatively, whether the district court should allow the admission of evidence concerning the sticking problem after permitting B&D to engage in discovery regarding the issue. These are matters for the district court to resolve on remand. Likewise, we express no opinion regarding B&D's claim that the district court failed to correctly instruct the jury regarding the elements of Mr. Senters' failure to warn claim. Any alleged errors in the jury instructions will need to be addressed by the district court on remand.

Entered for the Court


J. Thomas Marten
District Judge


-15-